Kenneth Dewayne HAYES, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–06–01055–CR, 01–06–01056–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

July 31, 2008.

Elisa Vasquez, Galveston, TX, for Appellant.

Rebecca Klaren, Asst. Crim. Dist. Atty., Kurt Sistrunk, Crim. Dist. Atty.–Galveston County, Galveston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices JENNINGS and BLAND.

## OPINION

SHERRY RADACK, Chief Justice.

Appellant, Kenneth Dewayne Hayes, was charged by indictments with two felony offenses of delivery of a controlled substance, cocaine, by constructive transfer and in an amount of one gram or more but less than four grams.[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon 2003). The offenses took place on a single day within a short time of each other and resulted from transfers to undercover agents of the federal Drug Enforcement Agency (DEA). The jury found appellant guilty in both offenses, as charged in the indictments and under jury charges that authorized conviction under the law of parties, and the trial court assessed punishment at two, concurrent prison sentences

---

1. The two charges were tried together. Trial court cause number 04CR3201 is appellate cause number 01–06–01056–CR; trial court cause number 04CR3202 is appellate cause number 01–06–01055–CR.

of ten years each. Appellant challenges the legal sufficiency of the evidence in both causes and claims egregious charge error in Cause No. 01–06–01056–CR. We affirm in Cause No. 01–06–01056–CR, and we reverse and render a judgment of acquittal in Cause No. 01–06–01055–CR.

## Background

In 2004, the City of Dickinson Police Department enlisted the assistance of the DEA to investigate and to prosecute drug trafficking in the city. On June 10, 2004, DEA Agents R. Hall and E. Williams were on duty and investigating narcotics activity undercover from a sports-utility vehicle (SUV) equipped with audio and video monitoring devices. At around 2:30 p.m., Agent Williams drove the SUV to a Coastal gas station and parked in its parking area. Agent Hall was seated in the front passenger seat of the SUV. Other law-enforcement officers of the City of Hitchcock and DEA were in the area conducting surveillance.

### A. Cause No. 01–06–01056–CR

Agents Hall and Williams observed a few men and a woman lingering under the shade of a tree near the Coastal station. Several of the men were straddling bicycles. While the agents were parked and waiting, two of the men drove their bicycles closely by the agents' SUV. One of these men retrieved an article from the rear bed of a nearby pickup truck before leaving the area of the agents' truck. One of the men, later identified as Terrence Walker, and the woman, later identified as Yvette Jackson (Yvette), looked over to the agents as they sat in the SUV. After about five minutes, Yvette responded to Agent Hall's beckoning gesture by approaching the passenger side of the SUV. Agent Hall asked her if anyone was selling drugs that day. Yvette initially replied

that she was unfamiliar with the two agents and voiced concern that they might be police officers, but when Agent Hall asked if she could provide $200 worth of rock cocaine, Yvette told the officers to wait and walked back to Walker.

Yvette spoke briefly with Walker, and they walked together to a green Toyota Camry parked at a gas pump, where appellant had been pumping gas. The Camry later proved to be registered to appellant, whom Agent Hall positively identified at trial. After both Walker and Yvette interacted with appellant near his Camry, appellant got into the driver's seat and Walker got into the passenger seat of the Camry, and they drove out of the gas station together. Yvette then walked back to the agents' SUV, where she reported that "they (appellant and Walker) were going to get the drugs" and would return soon. Yvette stayed by the agents' SUV making small talk with them as they waited.

Appellant returned to the gas station in the green Toyota Camry about five minutes later, this time with Gaines as a passenger. Yvette left her position by the agents's SUV at that point and walked over to the Toyota, where she communicated with both appellant and Gaines, and then returned to the agents' SUV. Appellant drove the Camry away yet again. When he returned, he parked the Camry to the right of the agents' SUV and slightly behind it.

Yvette returned to the Camry at that point and got into its rear passenger seat behind appellant. Yvette stayed in the Camry only briefly. After speaking to appellant and Gaines, she returned to the agents' SUV and entered the rear passenger seat behind Agent Williams, on the driver's side of the vehicle. At that point, appellant advanced his Camry forward so that it was very close to and almost com-

pletely aligned with the agents' SUV. Agent Hall would have hit the door of the Camry if he had tried to open his passenger-side door. Yvette then presented nine rocks of crack cocaine to Agent Williams, who inspected them and placed them in the cup holder in the front seat. From the front passenger seat of the SUV, meanwhile, Agent Hall began to engage in conversation with Gaines, who was still sitting in the passenger seat of appellant's Camry, and asked Gaines for an additional rock of crack cocaine. Yvette then got out of the SUV, leaving the rear side door open behind her, and returned to the Camry. Agent Hall was able to observe that Gaines handed "one more rock" to Yvette. Yvette returned to the SUV, gave Agent Williams the additional rock of cocaine, and then returned to the Camry, which appellant drove away.

During this transaction, Dickinson Police Officer S. Turrubiate was monitoring traffic while assisting the DEA agents with surveillance. Turrubiate heard a radio transmission in which Agent Hall broadcasted a description of appellant's vehicle and its license plate number. When Officer Turrubiate noticed appellant's green Camry, he followed it to a house near the Coastal station, but did not stop to observe any further action in order to avoid detection.

Also during this first transaction, Agent Hall asked Gaines how he could make another purchase in the next 30 or 45 minutes. Agent Hall did not speak with appellant, who was in the driver's seat, but "just talked by him" to Gaines. Gaines gave his telephone number to Agent Hall and told him to call when ready. Within the hour, Agent Hall dialed the number twice and indicated that he was ready to do another drug deal. The person Agent Hall contacted identified himself as "Tommy" and proposed that they meet at a specified house, but Agent Hall rejected that proposal and made arrangements to meet at a Citgo gas station located a short distance down the street from the Coastal gas station.

### B. Cause No. 01–06–01055–CR

At about 4 p.m., Agent Hall arrived at the Citgo gas station with a different undercover DEA agent, J. Ramirez, who drove the SUV. Agent Hall was again the passenger. Hall recalled that he telephoned Gaines again to state that he had arrived at the designated location. After Agent Ramirez parked the vehicle at the station, Gaines approached the agents' SUV on foot from behind the store area of the station. Gaines got into the agents' SUV and asked for money. When Agent Ramirez asked to see the drugs first, Gaines removed the cocaine from his sock and gave it to Agent Ramirez, who then gave Gaines $200. Gaines got out of the vehicle at that point, and the agents drove away.

DEA Agent B. Birdwell, who conducted surveillance on the undercover investigations relating to both transactions, watched as appellant and Gaines walked from the Coastal gas station to the Citgo gas station and confirmed that the men engaged in conversation as they walked. Agent Birdwell also testified that appellant waited on the sidewalk in front of the Citgo station, and that while Gaines was in the SUV with Agents Ramirez and Hall at the Citgo station, appellant walked up and down on the sidewalk and appeared to be acting in a "counter-surveillance capacity" by looking around to detect any police presence. According to another agent who was conducting surveillance, Gaines and appellant joined up again after Gaines completed the transaction at the Citgo station, and both men got into appellant's green Toyota Camry. Forensic evidence

established that each of the transactions involved 2.5 grams of cocaine.

## Legal Sufficiency

In his sole point of error in cause number 01–06–01055–CR and his second point of error in cause number 01–06–01056–CR, appellant contends that the evidence is legally insufficient to support his convictions for delivery of a controlled substance by constructive transfer, as charged in the indictments.

### A. Preliminary Considerations—Jury Charge & Law of Parties

Appellant's sufficiency challenges embody two underlying challenges relating to the charges provided to the jury.[2] In the first of these, appellant contends that the jury charges were incorrect and caused him egregious harm.[3] We need not address this contention within appellant's legal sufficiency challenges, because we assume a hypothetically correct jury charge in applying the legal-sufficiency standards. See Gharbi v. State, 131 S.W.3d 481, 483 (Tex.Crim.App.2003); Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App.1997).

In the second contention that serves as a premise for appellant's sufficiency challenges, appellant argues that the jury charges improperly authorized conviction under the law of the parties.[4] Appellant contends that, by including the law of the parties in the jury charge, the trial court effectively permitted the State to "amend" the indictment to allege an alternative means of committing the offense, specifically, according to the law of parties in sections 7.01(a) and 7.02(a)(2) of the Penal Code, TEX. PENAL CODE ANN. § 7.01(a) (Vernon 2003). See, e.g., Rodriguez v. State, 18 S.W.3d 228, 232 (Tex.Crim.App.2000) (holding that indictment alleging intoxication "by alcohol" precluded jury instruction authorizing conviction for alternative theory of intoxication by alternate means of "alcohol, a drug, or a combination"). Appellant's contention is misplaced.

■ In contrast to indictments in which the State specifies the manner and means of committing an offense and must seek to amend the indictment to rely on alternative means, see id., the Penal Code and well-settled law recognize that the State need not specify, in the indictment, its intent to rely on the law of parties in

2. Before reading the jury charges to the jury, the trial court explained that there were two charges, but that they were essentially the same and differed only with respect to the individual undercover agents to whom the narcotics were allegedly transferred. In the interest of brevity, after reading to the jury the charge in Cause No. 01–06–01056–CR in its entirety, the trial court read only the section of the charge in Cause No. 01–06–01055–CR that differed from the previous charge.

3. We address this contention below in our disposition of appellant's first point of error in Cause No. 01–06–01056–CR, which challenges the jury charge in that cause.

4. An individual is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or

both. TEX. PENAL CODE ANN. § 7.01(a) (Vernon 2003). A party may be criminally responsible as a party in several ways. See TEX. PENAL CODE ANN. §§ 7.01–.02 (Vernon 2003). The provisions of the Penal Code in this case are sections 7.01(a) and, in particular, 7.02(a)(2). A person is criminally responsible under section 7.02(a)(2) for an offense committed by another if, acting with intent to promote or assist the commission of the offense, the person solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. TEX. PENAL CODE ANN. § 7.02(a)(2). The jury charge in this case included an instruction that generally tracked this statute, an instruction that, "Mere presence alone will not constitute one a party to an offense," and a beyond-a-reasonable doubt paragraph that repeated that caution.

seeking conviction. *See* TEX. PENAL CODE ANN. § 7.01(c) (Vernon 2003); *Vodochodsky v. State,* 158 S.W.3d 502, 509 (Tex. Crim.App.2005); *see also Powell v. State,* 194 S.W.3d 503, 506 (Tex.Crim.App.2006) ("[A] person can be convicted as a party even if the indictment does not explicitly charge him as a party."); *Marable v. State,* 85 S.W.3d 287, 292 (Tex.Crim.App.2002) (specifically rejecting contention that indictment did not provide adequate notice for accused to prepare defense when indictment did not allege State's intended reliance on law of parties to prove actual transfer); *cf., Daniels v. State,* 754 S.W.2d 214, 218 (Tex.Crim.App.1988) (stating, in context of law of parties, that "evidentiary facts," not required for notice, need not be alleged in indictment). Because appellant's contention that the jury charges improperly authorized conviction under the law of the parties is thus without merit, his argument does not affect our legal-sufficiency analysis.

## B. Standard of Review

In addressing a challenge to the legal sufficiency of the evidence, we review the evidence in the light most favorable to the jury verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Vodochodsky,* 158 S.W.3d at 509 & n. 5 (citing *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The jury is the sole judge of the credibility of witnesses and the weight, if any, to give their testimony under this standard, *see Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex.Crim.App.2000), which applies equally to direct and circumstantial evidence. *See Powell,* 194 S.W.3d at 506. Our review must encompass the totality of circumstances, *Vodochodsky,* 158 S.W.3d at 509, but we may not reweigh the evidence and substitute our judgment for that of the jury. *King v. State,* 29

S.W.3d 556, 562 (Tex.Crim.App.2000). When, as here, the verdict results at least in part from the jury's considering circumstantial evidence, we must view that evidence "in combination and its sum total"; furthermore, "[i]t is the logical force of the circumstantial evidence," rather than any number of "links, that supports a jury's verdict." *See Evans v. State,* 202 S.W.3d 158, 164, 166 (Tex.Crim.App.2006) (explaining that court of appeals analyzed "facts or links in isolation" rather than in combination and sum total, and thereby misapplied standard of review in addressing legal-sufficiency challenge to conviction for possession of cocaine).

As noted above, we measure the legal sufficiency of the evidence as applied to a hypothetically correct jury charge, which should accurately state the law, be authorized by the indictment, adequately describe the offense tried, and not increase the State's burden of proof unnecessarily. *Malik,* 953 S.W.2d at 240; *see Vodochodsky,* 158 S.W.3d at 509.

## C. Hypothetically Correct Jury Charge

The indictments in this case alleged that appellant constructively transferred the controlled substance, cocaine, to the DEA agents named in the indictments. Having alleged a constructive transfer, the State had to prove a constructive transfer. *Davila v. State,* 664 S.W.2d 722, 724 (Tex. Crim.App.1984). To conform to the indictment, therefore, a hypothetically correct charge would require the State to prove, beyond a reasonable doubt, *either* that appellant delivered the cocaine himself by constructive transfer, *or,* because the State also relied on section 7.02(a)(2) of the Penal Code, that appellant was criminally responsible as a party to another's delivery of the cocaine by constructive transfer, specifically, by acting with intent to promote or assist the commission of the

offense, appellant solicited, encouraged, directed, aided, or attempted to aid the other person to commit the offense. *See* Tex. Penal Code Ann. §§ 7.01(a), 7.02(a)(2); *Vodochodsky*, 158 S.W.3d at 509 (citing same); *cf.*, *Davila*, 664 S.W.2d at 724 (noting that defendant had not been charged as party).

In the following sections we address the requirements of a hypothetically correct charge as to (1) the offense of constructive transfer and (2) the law of parties under sections 7.01(a) and 7.02(a)(2) of the Penal Code, as applied to the offense of constructive transfer.

### 1. *Constructive Transfer in General—Daniels Elements*

To prove the offense of delivery of a controlled substance, the State must prove that the defendant knowingly delivered a controlled substance. Tex. Health & Safety Code Ann. § 481.112(a) (Vernon 2003). The jury charge used the term "knowingly" and stated that a person "acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct[,] when he is aware of the nature of his conduct or that the circumstances exist." The Health and Safety Code defines "delivery" as a "transfer, whether actua[l] or constructiv[e], to another a controlled substance ... regardless of whether there is an agency relationship." Tex. Health & Safety Code Ann. § 481.002(8) (Vernon Supp. 2007). The jury charge included this definition. "Transfer" has been described as "a voluntary relinquishment of possession in favor of another." *Thomas v. State*, 832 S.W.2d 47, 51 (Tex.Crim.App.1992).

The Health and Safety Code does not define "constructive transfer." *See Sims*

*v. State*, 117 S.W.3d 267, 273–74 (Tex. Crim.App.2003) (citing *Daniels*, 754 S.W.2d at 219–21, for having considered several definitions from dictionaries and civil cases without adopting a specific definition). There is thus no "specialized 'criminal' meaning of the term." *Id.*, 117 S.W.3d at 275.

 When, as here, the State alleges constructive transfer of a controlled substance to a recipient, the State must prove both that the defendant (1) had either direct or indirect control of the transferred substance before delivery, *and* (2) knew that it would be delivered to a transferee. *Sims*, 117 S.W.3d at 277 (summarizing elements of *Daniels*, 754 S.W.2d at 221); *Swinney v. State*, 828 S.W.2d 254, 257 (Tex.App.-Houston [1st Dist.] 1992, no pet.) (applying *Daniels* elements). An intermediary is "not required" for constructive transfer, but the defendant "must have contemplated that there would in fact be a third party transferee" and that "constructive transfer could occur" when defendant directs transferee to retrieve contraband from a specified place. *Sims*, 117 S.W.3d at 277; *Jackson v. State*, 84 S.W.3d 742, 745 n. 4 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (noting that *Daniels* does not require proof that initial transferor know that specific individual was ultimate transferee, but does require that transferor know that initial transferee is not ultimate transferee) (citing *Daniels*, 754 S.W.2d at 221).[5]

When the State alleges that the defendant constructively transferred a controlled substance, but does not prove either one or both of the *Daniels* elements, the State has failed "a necessary precondi-

---

**5.** The jury charge in this case defined "deliver constructively" as "a transfer of a controlled substance belonging to some other person or agency at the instance and direction of the individual accused." Appellant did not object to this definition in the trial court and does not challenge the definition on appeal.

tion" to establish a transfer. *See Sims,* 117 S.W.3d at 271 (interpreting defendant's "direct or indirect control" element of *Daniels* and *Rasmussen v. State,* 608 S.W.2d 205, 210 (Tex.Crim.App. [Panel Op.] 1980) (op. on State's mot. for rehearing)).[6]

As *Sims* expressly qualified, however, this rule applies *"absent the law of parties"* and, therefore, only when the State charges a defendant as a primary actor and does not rely on the law of parties. *See Sims,* 117 S.W.3d at 271 (emphasis added). When, as here, the State relies on the law of parties to convict the accused of a constructive transfer, failure of proof, as to the accused, of the two requisite elements of constructive transfer confirmed in *Sims* will not invalidate the verdict on legal sufficiency grounds *unless* the State also fails to meets its burden of proof regarding the law of parties. *See id.,* 117 S.W.3d at 277; *Vodochodsky,* 158 S.W.3d at 509–10.

**2. *Law of Parties—Penal Code Sections 7.01(a) and 7.02(a)(2)***

In addition to authorizing the jury to assess criminal responsibility against appellant as charged in the indictment, by finding him guilty *as the primary actor* for conduct that constituted the offense constructive transfer, in accordance with the two requisite *Daniels* elements confirmed by *Sims,* 117 S.W.3d at 269, the hypothetically correct jury charge would, in addi-

tion, authorize the jury to assess criminal responsibility against appellant under the law of parties. Specifically, the hypothetically correct charge would also authorize finding appellant guilty for conduct by others that constituted constructive transfer, in accordance with criminal responsibility under Penal Code section 7.02(a)(2). As confirmed by *Vodochodsky,* 158 S.W.3d at 509, the hypothetically correct charge would authorize finding appellant guilty as a party through proof that appellant acted, with intent to promote or assist the commission of the offense, by soliciting, encouraging, directing, aiding, or attempting to aid the primary actor to commit the constructive transfer. *See id;* TEX. PENAL CODE ANN. §§ 7.01(a), 7.02(a)(2). *See Richardson v. State,* 879 S.W.2d 874, 882 (Tex. Crim.App.1993) (citing *Forbes v. State,* 513 S.W.2d 72, 79 (Tex.Crim.App.1974)); *Beier v. State,* 687 S.W.2d 2, 3 (Tex.Crim.App. 1985); *Christensen v. State,* 240 S.W.3d 25, 31 (Tex.App.-Houston [1 Dist.] 2007, pet. ref'd) (op. on rehearing).

■ Evidence that a person is a party to an offense may be entirely circumstantial, but the evidence must show that the parties were acting together to accomplish their common purpose. *See Powell,* 194 S.W.3d at 506; *Christensen,* 240 S.W.3d at 31. Any agreement to accomplish a common purpose must have been made before or contemporaneously with the criminal

**6.** In *Rasmussen v. State,* 608 S.W.2d 205, 210 (Tex.Crim.App. [Panel Op.] 1980) (op. on State's mot. for rehearing), the State failed to prove a constructive delivery of the contraband by the defendant. In this case, before the trial court submitted the case to the jury by a charge that included the law of parties, appellant moved twice for a directed verdict. Relying on *Rasmussen,* appellant argued that no evidence established that appellant had constructively transferred cocaine. The trial court overruled both motions, and appellant does not challenge those rulings on appeal.

In *Rasmussen,* the State also relied on the law of parties, as here, but the Court of Criminal Appeals found reversible error in the jury charge, which included only an instruction on the law of parties in the abstract and did not include, in addition, a paragraph that applied the law of parties to the defendant. *See id.,* 608 S.W.2d at 207–08. In contrast to *Rasmussen,* the jury charge here included both an instruction on the law of parties in the abstract and an application paragraph on the law of parties.

event, but in determining participation in an offense, the court may examine events that occurred before, during, and after the offense was committed. *Powell,* 194 S.W.3d at 507; *Christensen,* 240 S.W.3d at 31–32.

### D. Discussion—Cause No. 01–06–01056–CR

Regarding appellant's second point of error in cause 01–06–01056–CR, which involves the first transaction at the Coastal gas station, the evidence is legally sufficient for a rational trier of fact to find (1) that the primary actor, Gaines, delivered the 2.5 grams of cocaine involved in that transaction to Agent Williams by constructive transfer, and (2) that appellant was criminally responsible under section 7.02(a)(2) as a party to that constructive transfer.

#### 1. *Gaines as Primary Actor for Constructive Transfer*

■ The conduct by Gaines in this case is similar to the conduct this Court referred to in *Swinney* in holding that legally sufficient evidence established a constructive delivery. *Swinney,* 828 S.W.2d at 256–58. In *Swinney,* an undercover police officer drove his car past Swinney and three other individuals, who were standing on the side of the road and making head and hand gestures towards him that the officer recognized, from his experience, as an offer to sell drugs. *Id.* at 256. At Swinney's direction, the officer pulled his car up to the individuals, and Swinney asked the officer what he needed. *Id.* When the officer replied that he needed a twenty-dollar rock, Swinney returned to the other individuals and spoke with them, and Swinney and a juvenile walked to the officer's car. *Id.* The juvenile entered the officer's car on the passenger side while Swinney stood immediately outside the car. *Id.* When the juvenile asked

the officer how many he needed, the officer responded that he needed just one, took a single rock from the juvenile's hand, and then purchased it from the juvenile. *Id.* This Court held the evidence legally sufficient to prove that Swinney exercised indirect control over the drugs and that the juvenile acted under his direction and rejected Swinney's challenge to that element of constructive transfer. *Id.* at 257–58.

Like the juvenile in *Swinney,* Yvette made the actual transfer of the crack cocaine in this case, but only after Gaines had given the cocaine to her. When Walker and appellant left the scene "to get the drugs," appellant returned with Gaines. Gaines remained in the appellant's Camry while the actual transfer of the cocaine by Yvette to Agent Williams occurred, just as Swinney remained standing outside the officer's vehicle while the juvenile made the transfer. The circumstances here also show that Yvette conferred with Gaines in appellant's Camry and obtained the substances from Gaines for each transaction. After Yvette handed over the nine rocks of crack cocaine, Agent Hall requested an additional rock. Yvette left the agents' SUV and returned to the Camry, where Gaines gave her the additional rock, whereupon Yvette returned to the agents' SUV, where she executed the second sale of the final rock.

Viewed in accordance with the legal-sufficiency standard of review, a rational jury could find, beyond a reasonable doubt, from the evidence that (1) Gaines and Yvette planned the transaction, (2) Gaines exercised control over the drugs and voluntarily relinquished them to Yvette, (3) Yvette acted at Gaines's direction when delivering the drugs, and (4) Gaines knew that Agent Williams, and not Yvette, was the final transferee. *See Sims,* 117 S.W.3d at 277; *Daniels,* 754 S.W.2d at 221–22;

*Swinney,* 828 S.W.2d at 257–58. As in *Swinney,* therefore, the evidence is legally sufficient to establish that Gaines, as primary actor, delivered the narcotics to the undercover agent by constructive transfer, as alleged in the indictment.

### 2. *Appellant as Party to Constructive Transfer by Gaines*

■ Having concluded that Gaines was a primary actor in this constructive transfer, we next assess the legal sufficiency of the evidence to establish that appellant was a party to Gaines's constructive transfer of cocaine to Agent Williams under the law of parties of section 7.02(a)(2) of the Penal Code, as construed by this Court in *Christensen,* 240 S.W.3d at 31–32, by acting with intent to promote or assist the commission of the offense, appellant solicited, encouraged, directed, aided, or attempted to aid Gaines in committing the offense. *See* TEX. PENAL CODE ANN. §§ 7.01(a), 7.02(a)(2); *Vodochodsky,* 158 S.W.3d at 509 (citing same).

The circumstances of this case resemble those in *Donley v. State,* in which the defendant was convicted, as here, as a party to delivery of a controlled substance by constructive transfer, in accordance with section 7.02(a)(2) of the Penal Code. 140 S.W.3d 428, 429 (Tex.App.-Beaumont 2004, no pet.) (per curiam). In *Donley,* an undercover officer and an informant visited a trailer residence shared by three individuals, the defendant, a man named Taylor, and another resident. *Id.* at 429. The informant negotiated with Taylor for the purchase of methamphetamines out of the presence of the defendant and the undercover officer. *Id.* Taylor instructed the informant and the officer to go to the informant's home to complete the transaction. *Id.* at 429–30. The defendant drove Taylor and the other resident to the home of the informant, where the defendant observed the officer place money on the cof-

fee table while Taylor and the informant spoke in a back room. *Id.* at 430. Taylor entered the room, picked up the money, and dropped a bag of narcotics on the table. *Id.* The Beaumont Court of Appeals held that the evidence was legally sufficient to establish that the defendant aided and assisted Taylor's delivery by constructive transfer. *Id.*

In this case, as in *Donley,* appellant neither negotiated the sale nor physically transferred the drugs to any person. Yet, appellant transported Gaines, as to whom we have held that the evidence is legally sufficient to establish the offense of constructive transfer to Agent Williams, as primary actor. Appellant transported Gaines to the Coastal gas station, in aid of the transaction, just as the defendant in *Donley* drove Taylor to the location of the transaction, and appellant also left the scene of the offense with Gaines. Like the defendant in *Donley,* appellant watched the transfers of the narcotics close at hand, inside his Camry.

Regarding appellant's contention that no evidence shows that he was aware of the existence of the drugs until Gaines gave Yvette the extra rock, there is ample evidence of circumstances that occurred before, during, and after the offense, from which a rational jury could have found, beyond a reasonable doubt, that Gaines and appellant had a common understanding and design to engage in the offense of constructive transfer. *See Hubbard v. State,* 896 S.W.2d 359, 362 (Tex.App.-Houston [1st Dist.] 1995, no pet.).

Specifically, the circumstances of this case show that Yvette conversed or interacted with both appellant and another person at least three times during commission of the offense. In the first of these, Yvette spoke with appellant and Walker before they left together in appellant's Camry.

After that conversation, Yvette told the agents that "they," referring to appellant and Walker, who had just left the Coastal station in appellant's Camry, were "going to get the drugs." [7] When appellant returned to the Coastal station, he was transporting Gaines, who had not been at the scene before and who ultimately provided the cocaine that Yvette transferred to the DEA agents. On appellant's arrival at the Coastal station with Gaines as his passenger, Yvette approached the Camry and spoke with both appellant and Gaines, whereupon appellant drove away, still with Gaines as passenger. This was appellant's and Gaines's second conversation with Yvette. When appellant returned to the Coastal station, still with Gaines as passenger, appellant parked his Camry alongside, but still to the rear of the agents' SUV. Yvette entered the Camry through rear door behind appellant and again spoke with both appellant and Gaines. But when Yvette left the Camry and walked toward its rear and around to the rear passenger side of the agents' SUV, appellant pulled the Camry up so that it was much closer to the agents' SUV and almost parallel to it. The new position effectively prevented Officer Hall from opening the door of the SUV without hitting appellant's Camry. After Yvette entered the agents' SUV, she presented the first transfer of cocaine to Agent Williams. After completing the first transfer, Yvette returned to appellant's Camry, and left the scene with appellant and Gaines.

The logical impact of these interactions among Yvette, appellant, and first Walker and then Gaines, show more than "mere presence" on appellant's part. The evidence demonstrates that the narcotics were not at the Coastal station, had to be brought there, and were delivered there in appellant's Camry, with appellant driving.

During transit to the Coastal station, appellant drove into its parking lot and parked the Camry very closely to the agents' SUV, but when Yvette left the Camry with the first transfer of cocaine, appellant pulled up much more closely to the agents' SUV, so closely, in fact that the cars were aligned and the right passenger doors of the agents' SUV were blocked. In addition, Yvette received the nine rocks of cocaine in appellant's Camry and then received an additional rock of cocaine in appellant's Camry, in the presence of both appellant and Gaines. After or during Yvette's transfers to Agent Williams, Agent Hall spoke "across" appellant to discuss with Gaines, who was in the front passenger seat of the Camry beside appellant, how Hall could purchase more cocaine later that day. Finally, Yvette and Gaines drove away in appellant's Camry after completing the transaction.

A rational trier of fact could have found, from the sum total of this circumstantial evidence, on which the State may properly rely, *see Powell,* 194 S.W.3d at 506–07, including especially the proximity of the individuals involved in the transaction, that appellant acted, with knowledge, gained before or during Gaines's constructive transfer via Yvette, *see id.* at 507, that narcotics were being transferred, and that appellant knowingly agreed to accomplish the common goal of transferring the narcotics to Agent Williams. *See id.; Christensen,* 240 S.W.3d at 31–32. The jury could also have rationally found, based on these circumstances, that appellant acted with intent to promote or assist the commission of the offense of constructive delivery by Gaines by aiding or attempting to aid Gaines in committing that offense. *See* TEX. PENAL CODE ANN. §§ 7.01(a), 7.02(a)(2);

---

7. Appellant did not object to this evidence.

*Vodochodsky,* 158 S.W.3d at 509 (citing same).

We hold, therefore, that the evidence is legally sufficient to establish that, by transporting Gaines, appellant knowingly and intentionally aided and assisted Gaines to commit delivery of the narcotics, by constructive transfer, to Agent Williams, as charged in the indictment.

We overrule appellant's second point of error in cause number 01–06–01056–CR.

### E. Discussion—Cause No. 01–06–01055–CR

Appellant's sole point of error in Cause No. 01–06–01055–CR challenges the legal sufficiency of the evidence to support appellant's conviction regarding the second transaction at the Citgo gas station. As we have explained, a hypothetically correct charge in the present case would authorize the jury to assess criminal responsibility against appellant, as charged in the indictment, by finding him guilty *either* (1) as primary actor for conduct that constitutes constructive transfer, in this instance to Agent Ramirez, in accordance with the two requisite elements confirmed by *Sims,* 117 S.W.3d at 269, *or* (2) for conduct by others that constitutes constructive transfer, in accordance with criminal responsibility under section 7.02(a)(2), as confirmed by *Vodochodsky,* 158 S.W.3d at 509, by acting, with intent to promote or assist the commission of the offense, to solicit, encourage, direct, aid, or attempt to aid the other person to commit the constructive transfer to Agent Ramirez.

We conclude that the evidence is legally insufficient to support appellant's conviction for delivery of a controlled substance, by constructive transfer, to Agent Ramirez. The indictment charges appellant with constructive transfer, which became the State's burden to prove beyond a reasonable doubt. *See Daniels,* 754 S.W.2d at 221–22; *Davila,* 664 S.W.2d at 724. As the analysis that follows demonstrates, a rational trier of fact could not reasonably have found beyond a reasonable doubt from the evidence in this case that appellant was a party to constructive transfer of the cocaine by another or that appellant acted as the primary actor in a constructive transfer of cocaine to Agent Ramirez.

### 1. *No Constructive Transfer by Gaines*

■ In contrast to the first transaction at the Coastal station, a rational jury could not have found beyond a reasonable doubt that appellant was a party to a constructive transfer to Agent Ramirez, because the record establishes that an actual transfer, rather than a constructive transfer, occurred.

As addressed above, a constructive transfer occurs when the defendant (1) had either direct or indirect control of the transferred substance, *and* (2) knew that the substance would be delivered to a transferee. *See Sims,* 117 S.W.3d at 277 (summarizing *Daniels* elements, 754 S.W.2d at 221–22). Constructive transfer thus contemplates a "type of transfer that does not vest actual possession in the transferee." *Sims,* 117 S.W.3d at 274; *see Daniels,* 754 S.W.2d at 221–22.

■ Actual transfer, on the other hand, consists of "giving real possession to the transferee," his agents, or others legally identified with the transferee. *See Sims,* 117 S.W.3d at 273; *Hubbard,* 896 S.W.2d at 361; *see also Jackson,* 84 S.W.3d at 744 ("An 'actual transfer' of a controlled substance occurs when a defendant transfers actual possession and control [of the substance] to another person.") (citing *Thomas,* 832 S.W.2d at 51). The essence of actual transfer is that it vests immediate possession in the recipient. *See Sims,* 117 S.W.3d at 273 ("[Actual trans-

fer] is a formal immediate [transfer] of the property to the vendee.") (citing *Daniels,* 754 S.W.2d at 220).[8]

It is undisputed that appellant and Gaines were the only individuals at the Citgo station, except DEA agents Hall and Ramirez and that Gaines made the only transfer at the Citgo gas station. Gaines entered Agent Ramirez's vehicle, removed the cocaine from his sock, and handed the cocaine to Agent Ramirez, who handed $200 to Gaines. Gaines's conduct constituted an "actual transfer" because he manually transferred the controlled substance to Agent Ramirez. *See id.; Jackson,* 84 S.W.3d at 744; *Hubbard,* 896 S.W.2d at 362. In contrast to the constructive transfer accomplished at the Coastal station, Gaines did not entrust the narcotics to an intermediary like Yvette. Likewise, Gaines did not place the cocaine in a location and tell Agent Ramirez where to retrieve it. *See Sims,* 117 S.W.3d at 278. Gaines's conduct was not the "type of transfer that does *not* vest actual possession in the transferee." *See id.,* 117 S.W.3d at 274 (emphasis in original). To the contrary, Gaines's transfer vested immediate possession of the $200 worth of cocaine to Agent Ramirez and was, therefore, not a constructive transfer. *See id.*

### 2. *Therefore, No Constructive Transfer by Appellant as Party*

Because there is no evidence that Gaines constructively transferred the cocaine to Agent Ramirez, there is necessarily no evidence that appellant was criminally responsible as a party to a constructive transfer by Gaines, in accordance with section 7.02(a)(2) of the Penal Code, as con-

firmed by *Vodochodsky,* 158 S.W.3d at 509, by acting, with intent to promote or assist the commission of a constructive transfer, to solicit, encourage, direct, aid, or attempt to aid Gaines to commit a constructive transfer of cocaine to Agent Ramirez, as charged in the indictment.

### 3. *Appellant Was Not Primary Actor*

■ Because the jury charge authorized the jury to find appellant guilty as either a primary actor or as a party, we next address whether any rational trier of fact could have found that appellant, as the primary actor, constructively transferred the cocaine to Agent Ramirez. To be legally sufficient under the *Daniels* elements, the evidence had to show (1) that appellant had either direct or indirect control over the cocaine delivered to Ramirez and (2) knew that the cocaine would be delivered to someone else, in this case, Ramirez. *See Sims,* 117 S.W.3d at 277; *Daniels,* 754 S.W.2d at 221–22; *Swinney,* 828 S.W.2d at 257.

Considering the first element, there is no evidence in the record before us from which the jury could have found that appellant had direct or indirect control over the cocaine that Gaines removed from his sock and transferred to Agent Ramirez.

The facts relevant to the transaction at the Citgo station here are similar to the facts in *Dawson v. State,* in which officers approached Dawson and asked where they could get a twenty-dollar "rock" of cocaine. 812 S.W.2d 635, 636 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd). Dawson led the officers to a tin shack where an individual named Jenkins sat inside. *Id.* The

---

8. The Court of Criminal Appeals used the term "tradition" [sic], for which we have substituted "transfer." *Sims v. State,* 117 S.W.3d 267, 273 (Tex.Crim.App.2003). When a transferor directs the recipient to retrieve contraband that is already in place, a con-

structive transfer occurs; but a completed actual transfer also occurs when the recipient retrieves the contraband. *See id.* (holding that constructive transfer occurred notwithstanding that actual transfer also occurred).

officers and Dawson entered the shack, and the officers purchased cocaine from Jenkins. *Id.* A short time later, other officers arrived and arrested everyone inside the shack. *Id.* Our sister court held that no evidence showed that Dawson had exercised any control over the drugs. *Id.* at 637.

Like Dawson, appellant did not act in a manner that suggested that he had control over the cocaine that Gaines produced from his sock and handed to Agent Ramirez. Though appellant was present so as to hear the initial arrangements made at the Coastal for a second transaction and was nearby during this second transaction, the record does not show that anyone approached appellant about purchasing drugs or that anyone acted in a manner indicating that the cocaine Gaines removed from his sock before tendering it to Agent Ramirez belonged to appellant or was under his direct or indirect control.

Testimony and videotape evidence show that appellant transported Gaines twice during the first transaction at the Coastal station, walked with Gaines toward the Citgo station, and spoke with Gaines as they walked. A separate videotape confirmed that appellant was later seen outside the Citgo station, where the officers opined that he appeared to be acting as the "lookout" during the transaction with Agent Ramirez. After that transaction, appellant rejoined Gaines.

But nothing in these circumstances suggests that appellant had direct or indirect control over the cocaine. Though an officer stated that appellant spoke with Gaines as they walked to the Citgo station, the record contains no audiotapes, and no evidence discloses the substance of any conversations between appellant and Gaines. Likewise, the videotape in which appellant appears outside the Citgo station does not show any interaction between appellant and Gaines. The videotape shows only that appellant walked back and forth in front of the station and thus does not show that appellant had direct or indirect control over the drugs that Gaines eventually removed from his sock while he was in Agent Hall's SUV for transfer to Agent Ramirez. And nothing in the record shows that anyone saw the rocks of cocaine before Gaines removed them from his sock after entering Hall's SUV. Though the officers' testimony attributing "lookout" duty to appellant tends to support the verdict, the evidence nonetheless fails to show that appellant had direct or indirect control over the cocaine that Gaines delivered to Ramirez.

In *Swinney,* this Court held that the evidence was legally sufficient to establish that Swinney exercised indirect control over the narcotics, and that the juvenile acted under Swinney's direction to transfer them to the undercover officer. *Swinney,* 828 S.W.2d at 258. Swinney, however, had initiated contact with the officer when he gestured for the officer to pull over. *Id.,* 828 S.W.2d at 256. Swinney asked the officer what he wanted, and Swinney spoke with the juvenile. *Id.* No evidence shows that appellant ever spoke with any of the agents, and no witness was able to testify about any specific words that appellant uttered. In *Swinney,* moreover, the juvenile entered the officer's vehicle to complete the transaction, while Swinney stood just inside the angle created by the open passenger door. *Id.* Though appellant was present at the Citgo station, the circumstances here do not suggest a position comparable to Swinney's proximity to the officer's car door, from which we may infer that appellant exercised direct or indirect control over the cocaine transferred to Agent Ramirez. *See id.*

In *Davila,* an undercover officer and an informant entered a house and spoke with Davila, who asked what they wanted and went outside to speak with her husband, who eventually provided drugs to the officer. *Davila,* 664 S.W.2d at 723. After summoning her husband, Davila returned inside the house and sat on a couch. *Id.* Shortly thereafter, Davila's husband entered the residence and asked, "How many do you want?" and then the officer repeated his request. *Id.* Davila's husband handed over the drugs in exchange for money. *Id.* at 723–24. In affirming the appellate court's holding that the evidence was legally insufficient to establish that Davila constructively transferred the narcotics, *id.* at 724–25, the Court of Criminal Appeals stated that the evidence showed, at most, that Davila merely relayed the officer's offer to buy to her husband. *Id.* at 724.

In this case, the evidence does not show that appellant negotiated with the undercover agents, handled the narcotics, or directed anyone else to transfer the narcotics. The jury could reasonably have found in this case that appellant relayed Agent's Hall's request to purchase drugs to Gaines after Yvette and Walker spoke with appellant at Coastal gas station. The jury could also reasonably have found that appellant was aware, because Gaines was in appellant's Camry when Gaines and Agent Hall made arrangements for the second transaction, that Gaines might sell drugs at the Citgo gas station. Like the defendants in *Davila* and *Dawson,* however, appellant's knowledge of a possible drug transaction is not legally sufficient evidence to show that appellant controlled the cocaine or directed another to transfer the cocaine, as required to establish constructive transfer. *See Sims,* 117 S.W.3d at 269; *Daniels,* 754 S.W.2d at 221–22; *Swinney,* 828 S.W.2d at 257.

Having reviewed all the evidence presented at trial in the requisite light, we hold that a rational trier of fact could not have found beyond a reasonable doubt, from that evidence and a theoretically correct charge, that appellant constructively transferred cocaine to Agent Ramirez, either as the primary actor or as a party.

Accordingly, we sustain appellant's sole point of error in Cause No. 01–06–01055–CR.

### Cause No. 01–06–01056–CR

### Jury Charge Error—Conviction not Authorized by Indictment?

In his first point of error in cause number 01–06–01056–CR, which arises from the transfer of cocaine to Agent Williams, appellant contends that he sustained egregious harm from the trial court's erroneous charge to the jury because, though the indictment alleged delivery "by constructive transfer," the jury charge authorized conviction if the jury found that appellant was a party to the delivery of the cocaine by "direct" transfer and thus on a theory not alleged in the indictment. Appellant concedes there was no objection to the charge.

### A. Standard of Review

When, as here, there was no timely objection to the jury charge at trial, we will reverse only if appellant establishes error that resulted in egregious harm. *Abdnor v. State,* 871 S.W.2d 726, 732 (Tex. Crim.App.1994); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). We undertake a two-step analysis in reviewing claimed error in the jury charge, first by determining whether error actually exists in the charge and then, if there is error, we determine, by applying the *Almanza* harm analysis, whether sufficiently egregious harm resulted from the error to require reversal. *See Olivas v. State,* 202

S.W.3d 137, 143–44 (Tex.Crim.App.2006); *Almanza*, 686 S.W.2d at 171 (stating that Tex.Code Crim. Proc. Ann. art. 36.19 (Vernon 2006) states standard for both fundamental error, resulting from egregious harm, and ordinary reversible error).

## B. Charge Authorized Conviction for "Delivery" as a Party

A jury may not convict on a theory not specifically alleged in the indictment. *E.g., Rodriguez*, 18 S.W.3d at 232; *Daniels*, 754 S.W.2d at 222. The jury in this case found appellant "guilty of the offense of Delivery of a Controlled Substance, to wit: Cocaine as alleged in the indictment." The pertinent portion of the indictment in this case, however, was more specific and charged that appellant "knowingly deliver[ed]" cocaine to Williams "by constructive transfer."

In the definitions portion of the charge, the trial court defined "delivery" as the "means to transfer, actually or constructively, to another a controlled substance.... The term includes offering to sell a controlled substance." The charge defines "deliver constructively" as meaning "a transfer of a controlled substance either belonging to an individual or under his control by some other person or agency at the instance and direction of the individual accused" and also states that a person "acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist."

The trial court's last definition pertains to the law of parties and states, "All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both." In addition, the trial court tracked section 7.02(a)(2) of the Penal Code by stating, "A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense."

In the application paragraph that follows, the trial court charged the jury:

> Now, if you find from the evidence beyond a reasonable doubt that in Galveston County, Texas, on or about the 10th day of June, A.D.2004, the Defendant, KENNETH DEWAYNE HAYES, did then and there knowingly deliver *by constructive transfer*, to E[.] Williams, a controlled substance, namely, cocaine, in an amount of one gram or more but less than four grams, or then and there act with the intent to promote or assist YVETTE JACKSON or DEMETRIUS GAINES by encouraging, directing, aiding, or attempting to aid either YVETTE JACKSON or DEMETRIUS GAINES *in the delivery* of a controlled substance, to-wit: cocaine, in an amount of one gram or more but less than four grams, then you will find the Defendant guilty as charged in the indictment.

(Emphasis added.)

The first portion of this application paragraph plainly instructs the jury to convict appellant if he himself delivered the cocaine to Agent Williams "by constructive transfer," as charged in the indictment. But the second portion of the paragraph, which applies the law of parties and tracks section 7.02(a)(2) of the Penal Code, does not track the indictment and instead authorizes the jury to find appellant guilty as a party "in the delivery" by either Yvette or Gaines.

Appellant contends that using the words "in the delivery" in the second paragraph instead of "in the constructive transfer" was error and that it resulted in egregious harm because "delivery," under the charge given, encompasses both actual and constructive delivery.

According to appellant, the charge in this case is indistinguishable from the charge in *Daniels,* in which the defendant was found guilty of delivery of marihuana by constructive delivery, and the Court of Criminal Appeals ruled that error in the charge was fundamental. *Daniels,* 754 S.W.2d at 223. As in this case, the application paragraph of the *Daniels* charge authorized the jury to find Daniels guilty *either* "by his own conduct" *or* pursuant to the law of parties, by aiding commission of the offense. *Id.* at 222. But the application paragraph in this case differs significantly from that in *Daniels,* which stated,

> "Now, if you believe from the evidence beyond a reasonable doubt that the Defendant, James E. Daniels, *either by his own conduct* knowingly and intentionally *delivered* more than one fourth ounce of marijuana to Kimberly Hughes on October 12, 1992 in Burnet County *or* acting with intent to promote or assist *the commission of the offense* aided James E. Whited *to commit the offense charged as defined above,* and that the said James E. Whited did on October 12, 1982 *deliver* more than one fourth ounce of marijuana to Kimberly Hughes in Burnet County, Texas, you will find the Defendant guilty."

*Id.* (Emphasis added.)

The *Daniels* charge defined "deliver" as meaning "*the actual or constructive transfer* from one person to another of marijuana, whether or not there is an agency relationship." *Id.* (Emphasis in original.) The dispositive issue in *Daniels* was that the charge resulted in egregious

harm to Daniels because, by referring to "the offense" merely as "delivery" and defining "delivery" as *either* "constructive or actual" transfer, the charge impermissibly authorized a finding of guilt for actual transfer when the indictment alleged only constructive transfer. *See id.* Appellant contends that the jury charge in his case resulted in the same error and likewise authorized a finding of guilt for actual, or "direct" transfer, by the parties portion of the application paragraph. We do not agree.

Much like the *Daniels* charge, *see id.,* the charge in this case defines "deliver" in alternative terms, specifically, as "to transfer, *actually* or constructively" (emphasis added). But this definition is the only place in the charge that refers to the offense of "actual" transfer; there is *no reference at all* to the terms "direct transfer" or "direct delivery." In contrast to the *Daniels* charge, the charge in this case defines only "deliver constructively"; the charge does not define "actual transfer" as an offense and does not define "deliver *actually*" (emphasis added).

More importantly, the application paragraph contains only the terms "constructive transfer," in the portion pertaining to appellant as primary actor, and "the delivery," in the portion pertaining to appellant as a party. The application paragraph does not contain the terms "actual transfer." Thus, though the *Daniels* charge clearly authorized a finding of guilt for actual delivery as an alternative to the constructive delivery alleged in the indictment, *see id.,* the charge in this case did not. Rather, the portion of the application paragraph that applied the law of parties of section 7.02(a)(2) of the Penal Code authorized the jury to find appellant guilty for an unspecified "delivery," without qualification, in contrast to the primary-actor portion of the application paragraph, which

properly tracks the allegations by referring to the offense as "deliver[y] by constructive transfer."

The portion of the application paragraph that applied the law of parties of section 7.02(a)(2) referred to the offense as "delivery," without any additional description, rather than delivery "by constructive transfer," as alleged in the indictment. Because the definitions that described "delivery" referred to both actual and constructive delivery, the application paragraph authorized the jury to convict appellant as a party to an actual delivery and thus an offense for which appellant was never charged. Accordingly, we conclude that the jury charge contains an error and must proceed to assess whether the error resulted in egregious harm to appellant.

## C. Error Analysis by *Almanza* Factors

■ Unobjected-to error in a criminal jury charge will result in reversal only "if the error is so egregious and created such harm that [appellant] 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Almanza*, 686 S.W.2d 157 at 171. To conduct an egregious-harm analysis, we consider (1) the entire jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the argument of counsel and (4) any other relevant information revealed by the record of the trial as a whole. *Id.* We apply these factors to determine whether the portion of the application paragraph that applied the law of parties of section 7.02(a)(2) of the Penal Code resulted in egregious harm to appellant by authorizing a finding of guilty as charged by the indictment, for a mere "delivery," when the indictment alleged delivery by constructive transfer.

### 1. *The Entire Jury Charge*

The jury charge begins with a paragraph stating that appellant "stands charged by indictment with the offense of Delivery of a Controlled Substance." This paragraph thus omits that appellant was indicted for delivery by constructive transfer. In addition, the charge concludes by instructing the jury, "Your sole duty at this time is to determine the guilt or innocence of [appellant] under the indictment in this case."

The first portion of the application paragraph, however, clearly requires proof that appellant constructively transferred the cocaine, and the charge defined constructive delivery in terms that appellant does not contend are erroneous. Though the portion of the application paragraph that applies the law of the parties refers only to the "delivery," this portion of the charge does not refer to either an actual delivery or an actual transfer. Likewise, though the charge defines "delivery" in terms of either constructive or actual transfer, the charge does not define "actual delivery" or "actual transfer" and the word "actual" appears nowhere else in the charge.

We note further that the charge cautioned the jury twice that it could not find appellant guilty based solely on his presence at the scene of the offense. In defining the law of parties, the charge tracks the requirements of section 7.02(b) of the Penal Code by stating that "a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." But the charge proceeds beyond the requirements of section 7.02(a)(2) by cautioning the jury that "Mere presence alone will not constitute one a party to an offense."

In addition the charge contains a second "beyond a reasonable doubt" paragraph

that repeats, "As stated before, mere presence of [appellant] at the scene of the commission of the offense would not constitute him a party to the offense charged," and then states,

> "[I]f you should find from the evidence beyond a reasonable doubt that YVETTE JACKSON or DEMETRIUS GAINES did commit the offense of *delivery* of a controlled substance ... and that [appellant] was present, but you further find from the evidence, or have a reasonable doubt thereof, that [appellant] did not act with intent to promote or assist the commission of the delivery of a controlled substance ... by encouraging, soliciting, directing or aiding or attempting to aid YVETTE JACKSON or DEMETRIUS GAINES in the commission of said offense, if any, then you will find [appellant] not guilty."

(Emphasis added.)

This paragraph also refers to "delivery" without explaining that any delivery must be made by constructive transfer. But, like the portion of the application paragraph that applies the law of parties, this paragraph does not refer to an "actual" or "direct" delivery and the charge nowhere else refers to actual delivery and does not refer at all to "direct delivery" or "direct transfer."

Examining the jury charge as a whole in accordance with the first *Almanza* factor, we conclude that this factor weighs only slightly in favor of concluding that egregious harm to appellant resulted from the trial court's error in not categorizing delivery, in the portion of the application paragraph that applied the law of parties, as "constructive" delivery.

### 2. *The State of the Evidence*

We next consider the state of the evidence, including the contested issues and the weight of the probative evidence. The evidence at trial came almost entirely from law enforcement officers who were part of the undercover operation involving the two drug transactions. As addressed in our discussion of appellant's legal sufficiency challenge in Cause No. 01–06–01056–CR, the evidence is legally sufficient to support the jury's finding appellant guilty, as a party, of Gaines's primary-actor constructive transfer of cocaine to Agent Williams. Accordingly, this *Almanza* factor weighs against our concluding that egregious harm to appellant resulted from the trial court's error in not categorizing delivery, in the portion of the application paragraph that applied the law of parties, as "constructive" delivery.

### 3. *The Argument of Counsel*

In closing argument, the prosecutor explained to the jurors that they would be receiving two charges, one for each cause. Regarding the charge in this case, the prosecutor explained that the charge at issue would state that appellant "deliver[ed] by constructive transfer to [E.] Williams" and reminded the jurors of the discussions during voir dire, including constructive transfer and law of the parties. The prosecutor stated the following:

> ... [W]e all talked about if ... everybody's working together towards one common goal, then everybody helped. Everybody's guilty. And that's the case that we have here. [Appellant] was working together with [Gaines], with [Yvette] towards one common goal, and that's to sell cocaine. Because he helped them, because he aided them, because he did those things, he's guilty, just like they are, of *constructive delivery*.

(Emphasis added.)

As the emphasized portion of the preceding excerpt demonstrates, the prosecutor did not refer to an undefined "deliv-

ery," but to a constructive delivery, as alleged in the indictment.

Like the prosecutor, appellant's trial counsel did not refer to an undefined "delivery." Instead, trial counsel focused on the meaning of constructive delivery and on challenging whether the State had met its burden to prove that a constructive delivery occurred. In rebuttal, the prosecutor again emphasized, "Remember what we talked about constructive transfer. We talked about how for there to be a constructive transfer, that by itself necessitates somebody else. I'm not telling you that [appellant] handed over that cocaine. I'm telling you he was a party to that delivery, and that makes him guilty."

Neither counsel, therefore, emphasized in arguments to the jury that the jury charge authorized a finding of guilt based only on a determination that appellant made an undefined "delivery" or that he was a party to an undefined "delivery." Accordingly, this *Almanza* factor, too, weighs against finding that egregious harm to appellant resulted from the trial court's error in not categorizing delivery, in the portion of the application paragraph that applied the law of parties, as "constructive" delivery.

#### 4. *Other Relevant Information*

Appellant supports his claim that the jury charge resulted in egregious harm by arguing that the members of the jury were confused about both the different methods of transfer and the law of the parties under section 7.02(a)(2) of the Penal Code. A thorough review of the record demonstrates that some confusion between the definitions of delivery by actual transfer and delivery by constructive transfer began during voir dire, when veniremembers responded to the prosecutor's explanations by posing questions. In responding to these inquiries, the prosecutor explained that the trial court would provide a written charge for guidance. The prosecutor also explained the law of the parties.

We note further that the jury issued four communications to the trial court. One of these requested a break, and the remaining three concerned requests for copies of a video of the Coastal station and court reporter notes concerning DEA officers' discussion of plans assisting with drug enforcement. No communications referred to methods of transfer or the law of parties.

Appellant also argues that the evidence permits an alternative finding by the jury under the charge given. *See Evans*, 202 S.W.3d at 165 (addressing alternative hypothesis proposed by defendant). Specifically, appellant argues that Yvette could have owned the drugs that she transferred and sent appellant and Walker to bring them and Gaines to the Coastal station and thus effected an actual transfer of narcotics under her control. In contrast to *Evans, see id.*, the record in this case does not support that appellant suggested this alternative finding to the jury. But even if the jury considered this alternative under the evidence presented, the jury could have chosen, and obviously did choose, to reject it. *See id.*

Neither the jury's alleged confusion, nor the alternative findings that appellant contends that the charge permits, weighs heavily, as other relevant information under the fourth *Almanza* factor, in favor of finding that egregious harm to appellant resulted from the trial court's error in not categorizing delivery, in the portion of the application paragraph that applied the law of parties, as "constructive" delivery.

Having applied the *Almanza* factors, we hold that the trial court's error in not categorizing delivery, in the portion of the application paragraph that applied the law

of parties, as "constructive" delivery did not result in egregious harm to appellant.

We overrule appellant's first point of error in Cause No. 01–06–01056–CR.

## Conclusion

Having concluded that the evidence is legally sufficient to support the jury's verdict in Cause No. 01–06–01056–CR and that the error in the jury charge did not result in egregious harm to appellant, we affirm the judgment of the trial court in Cause No. 01–06–01056–CR. Having concluded that the evidence is legally insufficient to support the verdict in Cause No. 01–06–01055–CR, we reverse the judgment of the trial court and render a judgment of acquittal.

Justice BLAND, dissenting in Cause No. 01–06–01055–CR.

JANE BLAND, Justice, concurring and dissenting.

The majority acquits appellant of the conduct leading to his conviction during the second drug transaction, at the Citgo gas station, concluding that the evidence presented at trial is legally insufficient to convict appellant of constructive transfer of cocaine. It does so by reading *Sims v. State* to mean that constructive transfer *exclusively* contemplates a transfer that does not ultimately vest actual possession in the transferee, and can never include indirect participation in an actual transfer of drugs to a third party. *See Sims v. State,* 117 S.W.3d 267 (Tex.Crim.App. 2003). The majority's interpretation in effect holds that appellant is not guilty of the second drug transaction in this case because the evidence lacks a second intermediary, and the drugs actually were sold to Agent Ramirez, the ultimate transferee. The majority thus concludes that, even if appellant could be guilty of aiding and abetting an actual transfer, his conduct is insufficient to find him guilty as a primary actor on a charge of delivery by constructive transfer. Because *Sims* disavows such a restriction, and instead upholds a conviction for constructive transfer when the defendant had either direct or indirect control of the transferred substance, the evidence supporting the conviction relating to the Citgo transaction is legally sufficient. I therefore respectfully dissent from the judgment of acquittal in Cause No. 01–06–01055–CR, involving the drug transaction at the Citgo gas station. I join the majority opinion in affirming the conviction in Cause No. 01–06–01056–CR, arising out of the drug transaction that took place at the Coastal gas station.

*The evidence supporting the jury's verdict*

The evidence in this case that appellant participated in the second, Citgo transaction is as follows: (1) appellant worked with Gaines to accomplish the first transaction at the Coastal station, which involved Gaines and Agent Hall; (2) appellant listened in the driver's seat of his car as Agent Hall "talked by [appellant]" to ask Gaines, appellant's passenger, whether Hall could arrange another purchase in the next 30 or 45 minutes; (3) in appellant's presence, Gaines provided a cell phone number for Hall to call to arrange the second transaction; (4) appellant arrived with Gaines at the Citgo gas station, the location that Hall and Gaines had arranged in subsequent phone calls, using the phone number that Gaines had provided when he was in the car with appellant; (5) appellant arrived at the Citgo station with Gaines only after Hall called a second time to inform Gaines that Hall was parked in the Citgo parking lot, ready to do the deal; (6) appellant then separated from Gaines and acted in a "counter-surveillance capacity" during the transaction between Gaines and Agent Ramirez (who was Hall's passenger for the second drug deal); and (7) DEA

agents observed appellant driving Gaines away in appellant's car shortly after the transaction.

From this evidence, a reasonable jury could conclude that (1) appellant and Gaines worked together to sell drugs, as evidenced by the first transaction; (2) appellant knew that a second drug transfer was to take place, because the second meeting was arranged in appellant's car in his presence and involved the same intermediaries (Gaines and Agent Hall) who participated in the first transfer but a different ultimate transferee (Agent Ramirez); and (3) appellant exercised indirect control over the drugs entrusted to Gaines by providing the vehicle in which the transaction was negotiated, arriving with Gaines at the appointed place and time, by acting as a lookout for the transaction, and by driving Gaines away when the transaction was complete. Thus, the State presented legally sufficient evidence that appellant (1) had either direct or indirect control of the transferred substance, and (2) knew that it would be delivered to a transferee because he was present for the conversation Hall had with Gaines. *See Sims*, 117 S.W.3d at 269; *see id.* at 277 (noting that intermediary "not required" for constructive transfer, but that defendant "must have contemplated that there would in fact be a third party transferee").

Thus, I disagree with the majority's opinion that "there is no evidence in the record before us from which the jury could have found that appellant ever had direct or indirect control over the cocaine that Gaines transferred to Agent Ramirez." The majority correctly observes that appellant neither negotiated with Agent Hall nor handled the narcotics, and describes appellant's surveillance duties as "minimal participation." Mere presence at the location of the transaction, perhaps even in a "surveillance capacity," is insufficient evidence of indirect control. But here, other evidence exists: appellant listened as the plan was made by the passenger in his car with whom he had just conducted a drug deal, he arrived pursuant to the plan at the appointed place, he aided the effort by acting as a lookout, and he drove the get away car. It is true that no one saw appellant handle the drugs, but such is the case in every transfer where the defendant exercises indirect control. And, though appellant did not negotiate the deal with Agent Hall, appellant's actions facilitated its accomplishment—he provided the premises (his car) where the negotiations took place, later acted as lookout, and was the get-away driver. It then became for the jury to decide, whether, given these facts, appellant exercised indirect control over the narcotics.[1] Viewing the totality of

---

1. The court of appeals' decision in *Dawson v. State*, 812 S.W.2d 635, 636 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd) does not require an acquittal of appellant's second conviction. In *Dawson*, the court of appeals reversed a conviction based on constructive transfer when the defendant led an undercover officer to a man who then negotiated a drug purchase. 812 S.W.2d at 637. The court held that such evidence was legally insufficient because the defendant did not control the premises, and no evidence showed that he exercised influence over the delivery. *Id.* In contrast, here a jury could reasonably infer that appellant exercised some control, as the negotiations took place in the car he was driving, and influence, as he appeared at the later appointed time to assist as lookout in completing the transaction, and drove Gaines away after it was complete. Similarly, the Court of Criminal Appeals' decision in *Davila v. State*, 664 S.W.2d 722 (Tex.Crim. App.1984) does not warrant reversal. There, the defendant relayed a "cryptic" offer to purchase drugs, and no other evidence existed that she had any control over the premises or the seller's actions. *Id.* at 725. As discussed, here the negotiations took place in appellant's car, indicating some control, and appellant later appeared to assist in completing the transaction, facts not present in *Davi-*

the evidence in a light most favorable to the jury's verdict, the evidence shows that appellant and Gaines together controlled the cocaine sold in both transactions with Agent Hall.

### The aiding and abetting finding

Relying on *Sims*, the majority holds that because Gaines effected an actual transfer, appellant cannot be convicted as a party to a constructive transfer: "Because there is no evidence that Gaines constructively transferred the cocaine to Agent Ramirez, there is necessarily no evidence that appellant was criminally responsible as a party to a constructive transfer by Gaines ..."

But the fact that the jury was given a charge on the law of the parties is not meaningless, because Gaines's direct control of the drugs can be imputed to appellant as an aider and abetter. *See Sims*, 117 S.W.3d at 271 (discussing prior decisions, observing that "[D]irect or indirect control over the contraband—[is] a necessary precondition for showing an actual or constructive transfer (*absent the law of parties* ).") (emphasis added). To the extent that the evidence is deficient to show that appellant had direct or indirect control of the drugs as a primary actor, he nevertheless had control sufficient for the jury to convict him of aiding and abetting an actual transfer—he was a party to the Gaines/Hall/Ramirez transaction. This evidence supplies the control necessary to prove delivery by constructive transfer if the question is one of direct or indirect control.

The fact that Gaines completed the transfer to Agent Ramirez is not a bar to appellant's prosecution for constructive transfer. Although the Court of Criminal Appeals has held that the transaction need not be completed to sustain a conviction based on constructive transfer, it never has held the converse: that a completed transaction bars such a prosecution—rather, the court has merely held that "the defendant must have contemplated that there would in fact be a third party transferee" (here, Agent Ramirez, as set up in the negotiation with Gaines and Agent Hall). *Sims*, 117 S.W.3d at 277. Plus, the court has expressly held that an intermediary is not required for all types of constructive transfer. *Id.* The evidence of the conversation held between Gaines and Hall in appellant's presence to arrange a drug transaction similar to the one the parties had just completed supports an inference that appellant expressly contemplated a transfer to a third party—the fact that the parties achieved fruition of the transfer does not make it any the less planned and the jury's aiding and abetting finding, even assuming, as the majority contends, that it relates to evidence of an actual transfer, sufficiently supports a finding of "direct or indirect control." When coupled with evidence of knowledge of a future transferee (provided by the conversation that took place in appellant's presence), the argument that appellant is not guilty of delivery of drugs, as set forth in the statute, falters.

As the Court of Criminal Appeals has observed in discussing the quandary the appellate courts face in casting the facts of any particular delivery of narcotics as either actual or constructive, sometimes the conflict is "more apparent than real." *See id.* at 270. Here, the evidence presented is legally sufficient to support the jury's

*la.* This case instead is similar to *Swinney v. State*, 828 S.W.2d 254, 257 (Tex.App.-Houston [1st Dist.] 1992, no pet.) In *Swinney*, this court held that the evidence was legally sufficient to sustain a conviction for constructive transfer. Like the defendant in *Swinney*, here, the appellant was present both when Hall initiated the transaction, and was present when it took place. *See id.*, 828 S.W.2d at 258.

verdict and the trial court's judgment, and we should so hold.

**Conclusion**

I join the majority in affirming the judgment of conviction in Cause No. 01–06–1056–CR. The evidence is also legally sufficient to support the verdict and judgment of conviction in Cause No. 01–06–1055–CR, and thus our court should affirm that conviction too. I therefore respectfully dissent from the majority's opinion and judgment of acquittal in cause number 1–06–1055–CR.