# NO. 12-09-00040-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BRANDON B. BING,* *APPELLANT* | § | *APPEAL FROM THE THIRD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Brandon Bing appeals his convictions for aggravated assault with a deadly weapon and deadly conduct. In his sole issue, Appellant contends that the evidence is legally and factually insufficient to support the jury's verdict. We affirm.

### BACKGROUND

On October 12, 2006, between 3:00 a.m. and 4:00 a.m., Appellant and his two friends, Jeffrey Brooks and Cody Golightly, were driving in Appellant's truck around the Palestine, Texas area on Highway 79. Appellant's truck had only a single row bench seat, with space for a driver and two occupants to sit. Appellant was the driver of the truck, Golightly sat in the middle, and Brooks sat on the right. Because they had "nothing better else to do at that time," Brooks and Golightly threw 16.9 ounce plastic bottles of water at street signs while they were driving.

Later, while still traveling on Highway 79, Golightly and Brooks threw water bottles at two eighteen wheeler trucks. The first bottle hit the windshield of Fred Metheny's eighteen wheeler. The bottle did not completely penetrate the windshield, but the force from the impact caused windshield glass fragments to cut Metheny's face and arms. Shortly thereafter, a second

water bottle crashed through Erin Williamson's windshield, cutting her face and one of her corneas. Shards of glass became lodged in her eye, and she required medical treatment to remove them.

A 911 call was made and officers of the Palestine Police Department responded. Corporal Jeff Glass made the initial contact with Williamson and Metheny. Upon concluding that more water bottles might be thrown, Corporal Glass sought to apprehend the suspects based on a description of the truck provided by Williamson and Metheny. Corporal Glass saw a truck in Palestine that met the description and initiated a traffic stop. The Palestine Police Department determined the water bottles were thrown outside the Palestine city limits and consequently turned the investigation over to the Anderson County Sheriff's Department. Corporal Ryan Tolliver and Deputy Jason Chapman took control of the investigation.

Brooks told Corporal Tolliver that Appellant and Brooks had taken Golightly home shortly before the traffic stop. Brooks told Deputy Tolliver that Golightly had been throwing water bottles. The officers traveled to Golightly's home and spoke with him as well. Golightly stated that he and Brooks threw water bottles at the signs and eighteen wheelers while Appellant drove the truck.

Appellant was charged by indictment with two counts of aggravated assault with a deadly weapon. The matter proceeded to a jury trial, and Appellant pleaded not guilty. Ultimately, the jury found Appellant guilty of aggravated assault with a deadly weapon as to count I for Erin Williamson's injuries and of deadly conduct as to count II for Fred Metheny's injuries. The jury assessed punishment at six years of imprisonment on the aggravated assault count, probated for six years, and a fine of $2,500.00. On the deadly conduct count, the jury assessed 180 days of confinement.

### LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

In his sole issue, Appellant challenges the legal and factual sufficiency of the evidence to support the verdict.

### Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any

rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *LaCour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). The jury is the sole judge of the credibility of witnesses and of the weight to be given their testimony. *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). Any reconciliation of conflicts and contradictions in the evidence is entirely within the jury's domain. *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). Likewise, it is the responsibility of the jury to weigh the evidence and draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

In conducting a factual sufficiency review, we look at the evidence in a neutral light. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). A verdict will be set aside if the evidence supporting the conviction, although legally sufficient, is so weak that the jury's determination is clearly wrong and manifestly unjust, or if there is some objective basis in the record that shows the great weight and preponderance of the evidence contradicts the jury's verdict. *Berry v. State*, 233 S.W.3d 847, 854 (Tex. Crim. App. 2007); *Watson v. State*, 204 S.W.3d 404, 414-15, 417 (Tex. Crim. App. 2006). A clearly wrong and unjust verdict occurs where the jury's finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Berry*, 233 S.W.3d at 854.

Although we are authorized to disagree with the jury's determination, even if probative evidence exists that supports the verdict, our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the jury's determinations. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). It is not enough that we might harbor a subjective level of reasonable doubt to overturn a conviction that is founded on legally sufficient evidence. *See Watson*, 204 S.W.3d at 417.

We measure the sufficiency of the evidence by the elements of the offenses as defined by a hypothetically correct jury charge. *See Gharbi v. State*, 131 S.W.3d 481, 483 (Tex. Crim. App. 2003); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). This means a charge that accurately states the law, is authorized by the indictment, adequately describes the offense tried,

3

and does not increase the state's burden of proof unnecessarily or restrict its theories of liability. *Malik*, 953 S.W.2d at 240. Review of the sufficiency of the evidence under a hypothetically correct jury charge includes consideration of the law of parties. *Garza Vega v. State*, 267 S.W.3d 912, 915-16 (Tex. Crim. App. 2008).

**Applicable Law**

A person commits aggravated assault with a deadly weapon if he 1) intentionally, knowingly, or recklessly, 2) causes bodily injury, 3) to a person, 3) while exhibiting a deadly weapon. TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2) (Vernon 2003). "Bodily injury" means physical pain, illness, or impairment of physical condition. TEX. PENAL CODE ANN. § 1.07 (a)(8) (Vernon 2003). The definition of "deadly weapon" includes anything that, in the manner of its use or intended use, is capable of causing death or serious bodily injury. TEX. PENAL CODE ANN. § 1.07(a)(17) (Vernon 2003).

A person commits deadly conduct if he 1) recklessly engages in conduct, 2) that places another in imminent danger, 3) of serious bodily injury. *Id*. § 22.05(a). "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. *Id.* § 1.07(a)(46). The offense of deadly conduct is a lesser included offense of aggravated assault under the indictment in this case. *See Bell v. State*, 693 S.W.2d 434, 438-39 (Tex. Crim. App. 1985).

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both. TEX. PENAL CODE ANN. § 7.01(a) (Vernon 2003). A person may be criminally responsible for the conduct of another in several ways. *See id.* § 7.02 (Vernon 2003). As pertinent here, a person is criminally responsible for an offense committed by another if, acting with intent to promote or assist the commission of the offense, the person solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2). When a party is not the primary actor, the state must prove conduct constituting an offense plus an act by the defendant done with the intent to promote or assist such conduct. *Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985); *Miller v. State*, 83 S.W.3d 308, 313 (Tex. App.–Austin 2002, pet. ref'd). Although a

4

factor to be considered, mere presence alone is not sufficient to support a conviction under the law of parties. *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. 1979).

"Evidence that a person is a party to an offense may be entirely circumstantial, but the evidence must show that the parties were acting together to accomplish their common purpose." *Hayes v. State*, 265 S.W.3d 673, 681 (Tex. App.–Houston [1st Dist.] 2008, pet. ref'd). "Any agreement to accomplish a common purpose must have been made before or contemporaneously with the criminal event, but in determining participation in an offense, the court may examine events that occurred before, during, and after the offense was committed." *Id.* at 681-82.

**Discussion**

It is undisputed that Brooks and Golightly committed the charged offenses against Williamson and Metheny. It is likewise undisputed that Appellant threw nothing from his truck. The issue is whether Appellant is criminally liable under the law of parties. More specifically, the issue is whether the evidence is legally and factually sufficient to support the implied finding that Appellant had the intent to promote or assist the commission of the offenses and encouraged, directed, aided, or attempted to aid Brooks and Golightly in *their* commission of the offenses.

Appellant argues that he was merely present during the offenses and unwittingly provided a means of escape, which he maintains is insufficient to support his convictions. He testified that he did not have knowledge that any trucks were hit until Golightly and Brooks told him, which was shortly before they returned Golightly to his home. Thus, he argues, since he did not agree to participate in the crimes, did not know of the crimes until after they were complete, and was merely present at the scene, the evidence is insufficient to support the jury's verdict. We disagree.

The jury could have disbelieved his testimony that he had no knowledge of the offenses until after their completion. *See Santellan*, 939 S.W.2d at 164. Appellant, Golightly, and Brooks were driving around in the early morning hours because they were bored. All three were seated in close proximity in the truck such that Appellant would have known Golightly and Brooks were throwing water bottles. In fact, Appellant admitted that he knew Brooks and Golightly were throwing water bottles at street signs, but did not ask them to exit the vehicle or stop throwing the bottles. As Appellant continued to drive, Golightly and Brooks again threw

water bottles, one of which hit the windshield of Metheny's eighteen wheeler.[1] Brooks threw his bottle from the right passenger window, while Golightly threw his from the rear sliding glass window of the truck. Shortly thereafter, they threw more water bottles, one of which struck the windshield of Williamson's eighteen wheeler. Golightly testified that he heard at least one of the eighteen wheelers slam on its brakes after the impact.[2]

Once the eighteen wheelers had been hit, Appellant did not stop, but instead continued driving and took Golightly home. It was at that time, according to Appellant, that he first learned that the eighteen wheelers had been hit, but he admitted that he did not attempt to return to the scene because he "didn't figure they hit a windshield[; he] thought [Golightly and Brooks] hit the side of the truck."

Based upon the foregoing evidence, the jury reasonably could have found that Appellant saw each of the oncoming eighteen wheelers as they approached and that he knew, at the time, that Golightly and Brooks had thrown water bottles at each truck. Because Appellant made no attempt to stop Golightly and Brooks from throwing the water bottles, even after the first truck passed, the jury reasonably could have found that he intended to aid them in the commission of the offenses.

Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence is legally sufficient to support the verdict. The jury, as the factfinder, could have believed that Appellant had knowledge of the offenses and intended to aid in their commission under these circumstances, despite Appellant's testimony to the contrary. Additionally, having reviewed the record in its entirety, we have not observed any evidence that causes us to conclude that the proof of guilt is so obviously weak that the jury's determination is clearly wrong or manifestly unjust. Nor can we conclude that the great weight and preponderance of the evidence contradicts the jury's verdict. Therefore, the evidence is also factually sufficient to support the trial court's judgment. Appellant's sole issue is overruled.

---

[1] Although not entirely clear from the record, it appears that Golightly and Brooks simultaneously threw water bottles at both trucks, and Golightly was unsure whose bottle hit each truck. Brooks did not testify at trial.

[2] The record is unclear as to how much time elapsed between the two incidents, but it is clear that they were close in time because each driver, after impact, drove into the same parking lot to await the arrival of the police.

**DISPOSITION**

We *affirm* the judgment of the trial court.


   SAM GRIFFITH
Justice


Opinion delivered December 2, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(DO NOT PUBLISH)