In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00368-CR
_____

**BOBBY RAY HOUSTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 1st District Court**
**Jasper County, Texas**
**Trial Cause No. 12,070JD**

**MEMORANDUM OPINION**

A jury found appellant Bobby Ray Houston (Houston) guilty of criminal solicitation of L.M.,[1] a minor. *See* Tex. Penal Code Ann. § 15.031(a) (West Supp. 2014). The jury assessed punishment at ten years in prison and a ten thousand

---

[1] We identify the victims by using initials that disguise their identities. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims the "right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

1

dollar fine. In a single issue, Houston challenges the legal sufficiency of the evidence to support the verdict. We affirm.

EVIDENCE AT TRIAL

Testimony of L.M.

L.M. testified that she lives with her grandmother and great-grandmother. She stated that Houston lives "down the road" from where she lives, and that on September 28, 2013, when L.M. was sixteen years old, Houston came to her house in the morning when she was alone. L.M. testified that when Houston came over, her grandmother and great- grandmother had been gone for a few minutes. L.M. let Houston inside the house through the front door, and she locked the door after Houston came inside. L.M. explained that she and Houston went to her bedroom, where they talked about "boys and stuff[,]" and that Houston touched her on her shoulder and told her she was beautiful. L.M. said Houston asked her "to have sex[,]" but they did not have sex because her grandmother came back.

L.M. testified that when her grandmother returned she went to open the door for her grandmother, and Houston went "[t]o go hide." L.M. explained that her grandmother was upset and started searching for Houston once she was inside the house. L.M. testified that she felt uncomfortable and a little upset when Houston asked her to have sex with him.

2

L.M. testified that Houston had previously called her on the phone for about a month, they had talked about boys, and that Houston had given her advice and told her he wanted to have a relationship with her. L.M. explained she was nervous and scared, and she agreed that a few days prior to the trial, she had signed an affidavit of non-prosecution wherein she stated that she did not want to go to court. L.M. agreed it was hard to talk in court in front of Houston.

Testimony of S.S.

S.S. testified that she is L.M.'s grandmother and had been "raising" L.M. for most of L.M.'s life. She agreed she left L.M. at home by herself on the morning of September 28, 2013, but S.S. testified that she returned to the house about fifteen minutes later. S.S. said that when she returned to the house, she could see a head in L.M.'s bedroom window. S.S. said she knocked on the door, saying "[l]et me in[,]" and L.M. opened the door. S.S. testified that she was upset and she "grabbed a knife, and . . . went looking for whoever was in the house." S.S. said she opened the door to the bathroom and entered, and initially she did not see anything. S.S. further explained as follows:

> [S.S.]: . . . That's when I went to the bathtub, and the bathtub has a shutter that you pull back. And when I pulled it back, there stood Bobby Ray.
>
> [ATTORNEY]: In the bathtub?

[S.S.]: That's right.

[ATTORNEY]: With the shutter closed?

[S.S.]: With the shutter shut.

[ATTORNEY]: Did he have his clothes on?

[S.S.]: Yes.

[ATTORNEY]: Did you say anything to him?

[S.S.]: Yeah, "get out, get out, get out."

S.S. testified that, prior to that day, she had noticed L.M. was "on the phone all the time[,]" and L.M. would not let S.S. into L.M.'s bedroom and blocked the door with a chair. S.S. also explained that Houston had been to their house before that day, and she had spoken to Houston about talking to L.M. prior to September 28. S.S. also testified that after the incident on September 28, she asked for a criminal trespass warrant to be served on Houston.

S.S. explained that she signed a form saying she did not want to go to trial on the case because she knew it was going to be upsetting to L.M. and S.S. didn't want to put L.M. through more pain. But, S.S. agreed that Houston should be held accountable for his actions.

<u>Testimony of Captain Carter</u>

Captain Carter of the Jasper County sheriff's department testified that on the evening of September 28, 2013, he responded to a call at S.S.'s residence. He agreed that he served a criminal trespass warning on Houston that S.S. had requested "a day or two" after September 28, and that the warning advised Houston to "stay away from that resident[.]"

<u>Testimony of Officer Jordan</u>

Officer Jordan (Jordan), an investigator with the Jasper County sheriff's department, testified that she was dispatched to S.S.'s residence on September 28, 2013. Officer Jordan testified that she obtained statements from S.S. and L.M., that S.S. was "real upset, very upset[,]" and that L.M. was very quiet. Jordan explained that at first L.M. would not speak much to Jordan and Jordan believed "that's [L.M.'s] way of being upset[.]"Jordan did not agree that L.M. was nervous, shaking, stuttering, or trembling, and Jordan stated that L.M. "was just very, very quite [sic] and would keep her head down and talked very softly and quietly, you know, upset."

Jordan testified that no one tested the window in L.M.'s room for DNA or fingerprints and that she did not feel such testing was necessary because Houston "had been caught inside the house." Jordan agreed that, based on statements by

5

S.S. and L.M., Jordan obtained a warrant for Houston's arrest and that after Houston's arrest and after reading Miranda warnings to Houston, Jordan conducted an interview with Houston. A video recording was made of Jordan's interview of Houston.

Video Interview of Houston

Jordan's video interview of Houston was admitted into evidence and played for the jury. In his videoed statement, Houston admitted to talking with L.M. about running track and about reality shows and to being in the house on the day in question. Houston admitted he went to the bathroom while he was in the house, but he denied hiding in the bathroom. He also denied touching L.M., telling L.M. she was pretty, and asking L.M. to have sex with him on that day or any other time. Houston admitted he sometimes called the house but only if he was looking for one of the nephews. He also admitted he sometimes went to the house where S.S. and L.M. lived to mow the yard, move boxes, or help around the house.

ISSUE ON APPEAL

In a single issue, Houston argues that the evidence is legally insufficient to prove that he "knowingly and intentionally solicited the minor victim." In particular he argues that the evidence was based on "nothing more than mere speculation" and that L.M.'s testimony was "not sufficiently corroborated by other

evidence[,]" such as eyewitness testimony, phone records, fingerprints, or DNA evidence. The State responds that legal sufficiency does not require corroborating DNA or "scientific evidence," and that the jury could have found the testimony of witnesses other than the victim as well as Houston's Mirandized statement sufficiently corroborating to support the verdict.

## STANDARD OF REVIEW

In addressing a challenge to the legal sufficiency of the evidence, we review the evidence in the light most favorable to the jury verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Vodochodsky v. State*, 158 S.W.3d 502, 509 & n.5 (Tex. Crim. App. 2005) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)); *Hayes v. State*, 265 S.W.3d 673, 679 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). "The same standard of review applies to cases involving direct or circumstantial evidence." *Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006).

The jury is the sole judge of the credibility of witnesses and the weight to afford the testimony. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Our review encompasses the totality of circumstances, but we may not reweigh the evidence and substitute our judgment for that of the jury. *Vodochodsky*, 158 S.W.3d at 509; *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim.

7

App. 2000); *Hayes*, 265 S.W.3d at 679. We resolve any inconsistences in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). When, as here, the verdict results at least in part from the jury's consideration of circumstantial evidence, we view the evidence "in combination and its sum total," and "[i]t is the logical force of the circumstantial evidence, not the number of links, that supports a jury's verdict." *Evans v. State*, 202 S.W.3d 158, 164, 166 (Tex. Crim. App. 2006); *Hayes*, 265 S.W.3d at 679.

ANALYSIS

A person may not be convicted of the offense of solicitation of a minor

> on the uncorroborated testimony of the minor allegedly solicited unless the solicitation is made under circumstances strongly corroborative of both the solicitation itself and the actor's intent that the minor act on the solicitation.

Tex. Penal Code Ann. § 15.031(c). The corroboration that is required for the offense of solicitation of a minor is analogous to the corroboration requirement under the accomplice-witness statute. *Lankford v. State*, 255 S.W.3d 275, 277 (Tex. App.—Waco 2008, pet. ref'd) (comparing Tex. Penal Code Ann. § 15.031(c) with Tex. Code Crim. Proc. Ann. art. 38.14 (West 2005), and citing *Richardson v. State*, 700 S.W.2d 591, 594 (Tex. Crim. App. 1985)). Due to the similarities between these two statutes, the test for evaluating the sufficiency of the corroboration evidence is the same under each. *Richardson*, 700 S.W.2d at 594. In

8

assessing the sufficiency of the evidence corroborating the victim's testimony, the test used to evaluate such corroboration is to eliminate from consideration the minor victim's testimony and then determine whether there is other incriminating evidence tending to connect the defendant with the crime. *Lankford*, 255 S.W.3d at 277 (citing *Richardson*, 700 S.W.2d at 594). It is not necessary that the corroboration evidence directly link the accused with the crime or that it be sufficient in itself to establish guilt. *Richardson*, 700 S.W.2d at 594 (citing *Shannon v. State*, 567 S.W.2d 510 (Tex. Crim. App. 1978)).

Here, eliminating L.M.'s testimony from consideration, we conclude that the State presented other evidence that tends to connect Houston with the offense of solicitation of a minor. The record shows that S.S. testified that she had previously talked to Houston about the fact he had been talking with L.M. prior to the day in question. S.S. further testified that when she returned to her house about fifteen minutes after she left L.M. in the house by herself, S.S. found the front door locked, she saw someone in the house through the window, and after L.M. unlocked the door to let S.S. inside, S.S. found Houston in the bathtub, fully clothed and behind a shutter. Captain Carter and Officer Jordan with the sheriff's department were called to the house later the same day. S.S. and L.M. gave statements to Officer Jordan, after which Jordan obtained a warrant for Houston's

arrest. S.S. had requested a criminal trespass warrant be issued for Houston after the incident of September 28, 2013. Houston admitted he was in the house on the day in question, he admitted he was talking with L.M., and he admitted being in the bathroom when S.S. returned to the house.

Appellant's sole challenge under his legal sufficiency argument is that no "independent evidence" supported or corroborated the victim's testimony. The jury was free to believe the witnesses' testimony over the version of the incident provided by Houston in his recorded statement. *See Curry*, 30 S.W.3d at 406. The jury was permitted to draw reasonable inferences from the evidence, and we must defer to the jury as the finder of fact. *See Threadgill v. State*, 146 S.W.3d 654, 663 (Tex. Crim. App. 2004); *Johnson v. State*, 23 S.W.3d 1, 10 (Tex. Crim. App. 2000). We find that there was sufficient corroborating evidence presented to the jury to support L.M.'s testimony that Houston solicited her. *See Lankford*, 255 S.W.3d at 277-78. Viewing the evidence in the light that supports the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Houston solicited L.M., a minor, for sexual intercourse. We overrule Houston's issue on appeal.

AFFIRMED.

_____

LEANNE JOHNSON

Justice

Submitted on July 29, 2015
Opinion Delivered October 28, 2015
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.