# NO. 12-19-00311-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BILLY DON BULLARD,*<br>*APPELLANT* | § | *APPEAL FROM THE 294TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *VAN ZANDT COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Billy Don Bullard appeals his conviction for delivery of a controlled substance in an amount more than one gram but less than four grams. He presents three issues on appeal. We affirm.

## BACKGROUND

In 2016, Agent Joshua Petree of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) was investigating firearms sales in Van Zandt County. The Van Zandt County Sheriff's Office assisted in the investigation and provided a confidential informant, Jana Crow. Crow set up a controlled buy for firearms and methamphetamine. She called D'Ann Brown, with whom she already had a purchase arranged for firearms, and asked if she could also provide some methamphetamine. Brown responded that she did not know. After the phone call, Brown told Appellant what Crow had asked, to which he responded, "I don't know." Later that afternoon, Brown found methamphetamine in the seat of Appellant's car when they left to meet Crow.

Crow was outfitted with a recording device and funds for the controlled buy. Agent Petree and sheriff's deputies observed the interaction with binoculars. Appellant and Brown arrived at the meeting location. Appellant exited the vehicle first and gave Crow the firearms from the trunk. Brown then gave Crow the bag of methamphetamine. Crow paid Brown for both. Brown stated

that the firearms were hers and that Appellant was a friend providing her with transport because her husband was using their vehicle. Brown kept most of the money but shared some with Appellant. Later, Appellant and Brown were arrested and charged by indictment with actual delivery of a controlled substance, methamphetamine, in an amount more than one gram but less than four grams. Brown entered into a plea bargain and later testified at Appellant's trial.

Appellant pleaded "not guilty," and the matter proceeded to a jury trial. At the close of the State's evidence, Appellant moved for a directed verdict and argued that the State had not proved "actual delivery" as alleged in the indictment. The trial court denied his motion. At the charge conference, Appellant objected to the inclusion of "constructive delivery" in the definition of delivery. The trial court overruled the objection. The jury ultimately found Appellant "guilty" as charged. At the punishment phase, Appellant pleaded "true" to the indictment's enhancement paragraph, and the jury sentenced Appellant to forty-five years imprisonment. This appeal followed.

## ADMISSION OF ORAL STATEMENT

In his first issue, Appellant contends the trial court erred when it admitted his oral statement to Agent Petree in violation of Article 38.22 of the Texas Code of Criminal Procedure.

### Standard of Review and Applicable Law

In reviewing claims concerning the admission of statements made as the result of custodial interrogation, we conduct the bifurcated review articulated in *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997). *See Pecina v. State*, 361 S.W.3d 68, 78–79 (Tex. Crim. App. 2012). We measure the propriety of the trial court's ruling with respect to alleged violations under the totality of the circumstances, almost wholly deferring to the trial court on questions of historical fact and credibility, but reviewing de novo all questions of law and mixed questions of law and fact that do not turn on credibility determinations. *See Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011). We afford almost total deference to the trial court's determination of historical facts and mixed questions of law and fact that turn on the evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. Questions of law and mixed questions of law and fact not turning on credibility are reviewed de novo. *Id.* When the trial court does not make express findings of fact, we must view the evidence in the light most favorable to the trial court's rulings, assuming that it made implicit findings of fact that are supported by the record. *See Arguellez v. State*, 409 S.W.3d 657,

2

662–63 (Tex. Crim. App. 2013).  We will sustain the trial court's decision if it is correct on any applicable theory of law. *Id.*

Pursuant to Article 38.22, Section 3, no oral statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless (1) an electronic recording is made of the statement, (2) prior to making the statement, but during the recording, the accused is given a warning from the person to whom the statement is made that, among other things, he has the right to terminate the interview at any time, and (3) the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 §§ 2(a)(5), 3(a) (West 2018).  Article 38.22 further provides that "notwithstanding any other provision of this article, a written, oral, or sign language statement of an accused made as a result of a custodial interrogation is admissible against the accused in a criminal proceeding in this state if . . . the statement was obtained by a federal law enforcement officer in this state or another state and was obtained in compliance with the laws of the United States." *Id.* art. 38.22 § 8(2).

## Analysis

Appellant urges that the trial court erred in allowing Agent Petree to testify regarding his conversation with Appellant while in custody.  Appellant contends that his statement should have been excluded because Petree failed to comply with Article 38.22's recording requirement.

At trial, when Agent Petree was asked about the conversation with Appellant, trial counsel objected.  The following communication with the trial court transpired:

> MS. BEESLEY: Your Honor, I believe I want to object to the State going into anything about a discussion with my client.
> THE COURT: What's the basis of your objection?
> MS. BEESLEY: Your Honor, I just don't feel that they have established the basis for going into that. They haven't laid the proper predicate.
> THE COURT: The predicate objection will be overruled.

In order to preserve a complaint for appellate review, the record must show a timely and sufficiently specific complaint.  *See* TEX. R. APP. P. 33.1(a)(1).  A general or imprecise objection will not preserve error for appeal unless the legal basis for the objection is obvious to the court and to opposing counsel.  ***Vasquez v. State***, 483 S.W.3d 550, 554 (Tex. Crim. App. 2016).  Appellant did not specify to the trial court as to which predicate he perceived to be lacking.  At no time did Appellant complaint to the trial court that Agent Petree failed to record the interview in violation

of Article 38.22. *See Lovill v. State*, 319 S.W.3d 687, 691-92 (Tex. Crim. App. 2009) (complaint not preserved if legal basis raised on appeal varies from complaint made at trial). As a result, Appellant failed to preserve this particular complaint for appellate review. Appellant's first issue is overruled.[1]

## SUFFICIENCY OF THE EVIDENCE

In his third issue, Appellant urges the evidence is insufficient to support his conviction. Specifically, Appellant contends the State failed to prove actual transfer occurred and that there is no evidence he knowingly participated in the sale of methamphetamine.

**Standard of Review**

In Texas, the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). This standard gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010). The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899.

When the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated

---

[1] Even had Appellant preserved error, the oral statement complained of was made to a federal agent. Under Section 8, Article 38.22's requirements do not apply to a written, oral, or sign language statement made as a result of a custodial interrogation obtained by a federal law enforcement officer in this state or another state if obtained in compliance with the laws of the United States. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 § 8; *see also Hardy v. State*, 187 S.W.3d 232, 237 (Tex. App.—Texarkana 2006, pet. ref'd). Appellant does not complain that Agent Petree failed to comply with any laws of the United States in his custodial interrogation of Appellant. *See Hardy*, 187 S.W.3d at 237-38 (expressing doubt that objection to non-compliance with Article 38.22's recording requirements would have been sustained; statement obtained by FBI agent - and there was no contention that statement was obtained in violation of laws of the United States – would seem to be covered by Section 8, rendering an objection fruitless). As a result, Appellant's oral statement to a federal agent was admissible under Section 8 of Article 38.22. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 § 8.

4

equally.  *Id.*  Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt.  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances.  *Hernandez v. State*, 190 S.W.3d 856, 864 (Tex. App.–Corpus Christi 2006, no pet.).

**Hypothetically Correct Jury Charge**

The indictment in this case alleged that Appellant actually transferred the controlled substance, methamphetamine, to the confidential informant.  The indictment did not allege constructive transfer.  Having alleged an actual transfer, the State had to prove an actual transfer.  *Davila v. State*, 664 S.W.2d 722, 724 (Tex. Crim. App. 1984); *Hayes v. State*, 265 S.W.3d 673, 679 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).  To conform to the indictment, therefore, a hypothetically correct jury charge would require the State to prove, beyond a reasonable doubt, either that (1) Appellant delivered the methamphetamine himself by actual transfer, or (2) because the State also relied on Section 7.02(a)(2) of the Penal Code, that Appellant was criminally responsible as a party to another's delivery of the methamphetamine by actual transfer, i.e., by acting with intent to promote or assist the commission of the offense, Appellant solicited, encouraged, directed, aided, or attempted to aid the other person to commit the offense.  *See* TEX. PENAL CODE ANN. §§ 7.01(a); 7.02(a)(2) (West 2011); *Hayes*, 265 S.W.3d at 679-80.

To prove the offense of delivery of a controlled substance, the State must prove that the defendant knowingly delivered a controlled substance.  TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2017).  Here, the jury charge used the term "knowingly" and stated that a person "acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct[,] when he is aware of the nature of his conduct or that the circumstances exist."  *See* TEX. PENAL CODE ANN. § 6.03(b) (West 2011) (defining "knowingly").  The jury charge also contained the Health and Safety Code's definition of "delivery:" a "transfer, whether actua[l] or constructiv[e], to another a controlled substance ... regardless of whether there is an agency relationship."  TEX. HEALTH & SAFETY CODE ANN. § 481.002(8) (West Supp. 2019).  "Transfer" has been described as "a voluntary relinquishment of possession in favor of another."  *Thomas v. State,* 832 S.W.2d 47, 51 (Tex. Crim. App.1992).

Actual transfer consists of "giving real possession to the transferee," his agents, or others legally identified with the transferee.  *See Sims,* 117 S.W.3d at 273; *Hubbard,* 896 S.W.2d at 361;

*see also Jackson,* 84 S.W.3d at 744 (citing *Thomas,* 832 S.W.2d at 51) ("An 'actual transfer' of a controlled substance occurs when a defendant transfers actual possession and control [of the substance] to another person."). The essence of actual transfer is that it vests immediate possession in the recipient. *See Sims,* 117 S.W.3d at 273 (citing *Daniels,* 754 S.W.2d at 220) ("[Actual transfer] is a formal immediate [transfer] of the property to the vendee.").

In addition to authorizing the jury to assess criminal responsibility against Appellant as charged in the indictment, by finding him guilty as the *primary actor* for conduct that constituted the offense of actual transfer, the hypothetically correct jury charge would authorize the jury to assess criminal responsibility against Appellant under the law of parties. Such a hypothetically correct charge would authorize finding Appellant guilty for conduct by others that constituted actual transfer, in accordance with criminal responsibility under Section 7.02(a)(2). The hypothetically correct charge would authorize finding Appellant guilty as a party through proof that Appellant acted, with intent to promote or assist the commission of the offense, by soliciting, encouraging, directing, aiding, or attempting to aid the primary actor to commit the actual transfer. *See* TEX. PENAL CODE ANN. §§ 7.01(a), 7.02(a)(2); *see also Richardson v. State,* 879 S.W.2d 874, 882 (Tex. Crim. App. 1993) (citing *Forbes v. State,* 513 S.W.2d 72, 79 (Tex. Crim. App. 1974)); *Beier v. State,* 687 S.W.2d 2, 3 (Tex. Crim. App. 1985); *Christensen v. State,* 240 S.W.3d 25, 31 (Tex. App.—Houston [1 Dist.] 2007, pet. ref'd) (op. on rehearing).

Evidence that a person is a party to an offense may be entirely circumstantial, but the evidence must show that the parties were acting together to accomplish their common purpose. *See Powell,* 194 S.W.3d at 506; *Christensen,* 240 S.W.3d at 31. Any agreement to accomplish a common purpose must have been made before or contemporaneously with the criminal event, but in determining participation in an offense, the court may examine events that occurred before, during, and after the offense was committed. *Powell,* 194 S.W.3d at 507; *Christensen,* 240 S.W.3d at 31–32.

**Analysis**

Agent Petree testified that he was assisting the Van Zandt County Sheriff's Office and the Canton Police Department with firearms sales investigations in 2016. Those investigations included an investigation involving Appellant. In March, the investigation progressed to a point that law enforcement decided to conduct a "controlled buy" utilizing a confidential informant, Crow, provided by the Canton Police Department. Crow told law enforcement that she knew of

someone who had firearms, and possibly drugs, for sale. The officers set up a controlled buy for March 21, 2016. Prior to the sale, Crow met with law enforcement, at which time she was patted down and her vehicle was checked to ensure she did not have any contraband. Crow received funds for the purchase and a recording device to record the transaction. Using binoculars, Agent Petree and other law enforcement officials observed the transaction from approximately one-fourth mile away. Agent Petree testified that he observed Appellant, Crow, and another female, Brown, at the buy. Brown and Appellant arrived in the same vehicle, which Appellant was driving. Petree testified that Appellant did not appear surprised by the drug deal and actually appeared to be overlooking the transaction. Petree observed Brown physically hand the bag of methamphetamine to Crow. Later, after Appellant was arrested and given *Miranda* warnings, Appellant made a reference to Agent Petree that he was aware the methamphetamine transaction occurred.

The recording of the transaction was also introduced into evidence. On the video, Appellant is heard conversing with Brown and Crow about the firearms. Following the firearms transaction, the video shows Appellant walking to the back of the vehicle for a moment while Crow and Brown discussed the methamphetamine. Appellant returned to the front of the vehicle and watched Crow count out the money. He then watched Brown pass the bag of methamphetamine to Crow when Crow handed Brown the funds.

Officer Jeff Morgan of the Canton Police Department testified that he was in charge of the Department's confidential informants in March 2016. Officer Morgan testified that Crow made several controlled buys for the Department prior to the March 21, 2016 encounter. Morgan stated that he observed the controlled buy "from a distance," but "didn't observe it with [his] own eyes."

Heath Burton was a Van Zandt County Sherriff's Deputy at the time of the purchase.[2] In 2016, Burton was a lieutenant over narcotics and was assigned to the Drug Enforcement Agency (DEA). Burton testified that he participated in preparing for the March 21, 2016 controlled buy, including the collection of narcotics evidence. While he accompanied other law enforcement to the meeting site, he did not recall actually observing the transaction occur.

Brown testified in exchange for a plea bargain. She stated that she received a phone call from Crow on the morning of March 21, 2016, asking "if we could get her a 16th of meth." Brown stated that she and Appellant already had a meeting set up with Crow to sell her some guns. In

---

[2] Burton testified that he is currently employed by Canton Independent School District. However, he was a deputy at the time of and assisted in the investigation.

response to Crow's question about the methamphetamine, Brown told Crow that she did not know. She asked Appellant about Crow's request, to which he responded that he also did not know. Brown further testified,

> A. After I got dressed, it was time for us to leave to go meet her because we already had a set-up time to meet her, so we left. We went and met her. When I got -- went out of the house and got in the car, the meth was in there. I picked it up and I sat down.
> Q. Okay. Where was the meth at that point?
> A. In the seat.
> Q. Okay. Whose vehicle was it?
> A. Mr. Bullard's.

Appellant then drove them to meet Crow. When asked to describe the meeting, Brown testified to the following:

> A. Well, I got out. I had the meth in my hand. I went to the back of the car where she was. Mr. Bullard got the guns out and me and her did the transaction, and she paid me for the amount that was, you know, discussed.
> Q. Okay. And the amount was for both the guns and the drugs?
> A. I assume, yes.
> Q. Okay.
> A. Best that I can remember, yes.
> Q. Okay. And Mr. Bullard was present during all these interactions?
> A. Yes, he was standing on the side of the car.
> Q. Okay. Did Mr. Bullard, at any time during your -- while in your presence, did he touch, handle, or anything like that the methamphetamine?
> A. No, sir.
> Q. Okay. You conducted the transaction with Ms. Crow?
> A. Yes.
> Q. Okay. And then what happened?
> A. Then, basically, we just leave. I mean, we did do the transaction, she gets in her car, we might have talked for a minute, we leave.
> . . .
> Q. Okay. Where did that money go?
> A. Well, I kept the majority of it. Now, yes, I did give Mr. Bullard some of it for conducting the transaction or setting the transaction up for us.
> Q. Okay. Why did -- the guns in question, were they your guns?
> A. Yes, sir.
> Q. Okay. So Mr. Bullard was selling your guns?
> A. Yes, sir.
> Q. Okay. But Mr. Bullard was -- would you call him an intermediary?
> A. I guess, I mean, you know, she had asked him about some guns and then he told us about it, so that's how we knew about it.

Brown testified that Appellant set up the sale for the guns; however, Crow contacted Brown about the methamphetamine. She further testified that she assumed the bag of drugs weighed 1.7 grams because that was the amount Crow asked them to provide. Brown admitted that Appellant never mentioned the drugs or told her to give them to Crow.

Appellant was charged with actual delivery of a controlled substance. The evidence establishes, and the State concedes, that Appellant did not actually deliver or touch the methamphetamine during the transaction with Crow. Nevertheless, because the State invoked the law of the parties, Appellant was subject to being convicted of actual delivery. *See* TEX. PENAL CODE ANN. §§ 7.01, 7.02; *Conaway v. State*, 738 S.W.2d 692, 694 (Tex. Crim. App. 1987). As the sole judge of the credibility of witnesses and the weight of evidence, the jury was entitled to credit Brown's testimony that Appellant provided the methamphetamine after she asked him about it. Furthermore, the jury watched and heard the video recording of Crow's purchase and could have reasonably determined that Appellant was observing and assisting in the transaction in the video. In addition, the jury heard testimony that Appellant set up the initial transaction for the firearm sale, drove to the meeting, and was aware the methamphetamine sale occurred. At a minimum, the jury could reasonably conclude that Appellant was criminally responsible as a party to Brown's delivery of the methamphetamine by actual transfer, i.e., by acting with intent to promote or assist the commission of the offense, Appellant solicited, encouraged, directed, aided, or attempted to aid the other person to commit the offense. *See* TEX. PENAL CODE ANN. §§ 7.01(a); 7.02(a)(2); *Hayes*, 265 S.W.3d at 679-80. As a result, the jury was rationally justified in finding, beyond a reasonable doubt, that Appellant knowingly participated in the actual delivery of methamphetamine in an amount more than one gram but less than four grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112. Because the evidence is sufficient to support Appellant's conviction, his third issue is overruled.

## CHARGE ERROR

In his second issue, Appellant contends the trial court erred when it overruled his objection to the definition of "delivery" included in the jury charge. Specifically, Appellant urges that the definition is broader than the charge contained in the indictment and allowed the jury to convict him on a theory that was not pled or proved by the State.

**Standard of Review**

The review of an alleged jury charge error in a criminal trial is a two-step process. ***Abdnor v. State***, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). First, an appellate court must determine whether there was error in the jury charge. *Id*. Then, if there is charge error, the court must determine whether there is sufficient harm to require reversal. *Id.* at 731–32. The standard for determining whether there is sufficient harm to require reversal depends on whether the appellant objected to the error at trial. *Id.* at 732.

If the appellant objected to the error, the appellate court must reverse the trial court's judgment if the error "is calculated to injure the rights of the defendant." TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006). This means no more than that there must be some harm to the accused from the error. ***Almanza v. State***, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). An appellant who did not raise the error at trial can prevail only if the error is so egregious and created such harm that he has not had a fair and impartial trial. *Id*. "In both situations the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id*.

The record must show that the defendant suffered actual harm, not merely theoretical harm. *Id*. at 174. In assessing whether the trial court erred by denying a requested defensive instruction, an appellate court must examine the evidence offered in support of the defensive issue in the light most favorable to the defense. ***Farmer v. State***, 411 S.W.3d 901, 906 (Tex. Crim. App. 2013).

Generally, a trial court must deliver to the jury "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). The charge must include an instruction on any defensive theory raised by the evidence and properly requested by the defendant. ***Booth v. State***, 679 S.W.2d 498, 500 (Tex. Crim. App. 1984). But the trial court has no duty to instruct the jury sua sponte on unrequested defensive issues because they are not "the law applicable to the case." ***Vega v. State***, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013). A defendant who fails to preserve his request for a defensive instruction cannot complain about its omission on appeal because he procedurally defaulted his complaint. *Id*.

**Enlarging the Indictment**

A defendant is to be tried only on the felony crimes alleged in the indictment. *See **Abdnor**, 871 S.W.2d at 738*. Where the indictment facially alleges a complete offense, the State is bound

by the theory alleged in the indictment. *See Fisher v. State,* 887 S.W.2d 49, 55, 57 (Tex. Crim. App. 1994). This is true regardless of whether the State intended to charge that offense. *See Thomason v. State,* 892 S.W.2d 8, 11 (Tex. Crim. App. 1994). The jury charge must not enlarge the offense alleged and authorize the jury to convict the defendant on a basis or theory permitted by the jury charge but not alleged in the indictment. *See Fella v. State,* 573 S.W.2d 548, 548 (Tex. Crim. App. 1978).

The charge in this case defines "deliver" in alternative terms, specifically, as "to transfer, actually or *constructively*." (emphasis added). But this definition is the only place in the charge that refers to the offense of "constructive" transfer. Furthermore, the application paragraph contains only the terms "actual transfer" in the portion pertaining to Appellant as primary actor, and "the delivery," in the portion pertaining to Appellant as a party. The application paragraph does not contain the terms "constructive transfer." Because the definitions that described "delivery" referred to both actual and constructive delivery, the application paragraph authorized the jury to convict Appellant of constructive delivery, an offense for which Appellant was never charged. Accordingly, we conclude that the jury charge contains error. However, because an erroneous jury charge does not result in automatic reversal, we must proceed to assess whether the error resulted in harm to Appellant. *Hayes*, 265 S.W.3d at 690–91; *Abdnor*, 871 S.W.2d at 731.

**Harm Analysis**

Because Appellant objected to the error, we must reverse the trial court's judgment if the error "is calculated to injure the rights of the defendant." TEX. CODE CRIM. PROC. ANN. art. 36.19. This means no more than that there must be some harm to the accused from the error. *Almanza*, 686 S.W.2d at 171. To conduct a harm analysis, we consider the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Id*. Appellant must have suffered actual harm, not merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012).

Appellant urges that the inclusion of "constructive transfer" in the definition of "deliver" confused the jury and allowed it to convict Appellant of a charge not included in the indictment. We disagree.

Within the entirety of the jury charge, the term "constructive" is listed only once, in the definition of "deliver." The charge begins by informing the jury that Appellant is charged with

11

"delivery of a controlled substance," without specifying the type of delivery alleged. The charge also defines the law of the parties and explains the standard for determining when a person becomes criminally responsible for the conduct of another. Importantly, the application paragraph of the charge instructs the jury that it will find Appellant "guilty" as charged in the indictment if it finds beyond a reasonable doubt that Appellant knowingly delivered, "by actual transfer," methamphetamine to the confidential informant. *See Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012) ("It is the application paragraph of the charge, not the abstract portion, that authorizes a conviction"). Thus, the charge in its entirety focused the jury's attention on actual transfer, not constructive transfer, and we presume the jury convicted Appellant pursuant to the application paragraph. *See id*. (application paragraph tracked language of information, and thus restricted jury's consideration to only those allegations contained in the information… jury is presumed to have understood and followed court's charge, absent evidence to the contrary).

As discussed above, the evidence at trial showed that no one saw Appellant actually touch the methamphetamine. However, an actual transfer between Brown and Crow occurred. As such, the State had to prove that Appellant was a party to the offense via soliciting, encouraging, aiding, directing, or attempting to aid in the actual transfer of the methamphetamine. The jury heard evidence that Appellant was assisting Brown in the sale of firearms because she was without a vehicle on the day in question. Brown further told the jury that she found the bag of methamphetamine in Appellant's vehicle after she had asked him about whether they could obtain some drugs for Crow. Crow's recording of the sale showed Appellant participating in the firearms sale and watching the methamphetamine sale. Furthermore, the jury heard evidence that Appellant was aware of what was occurring and appeared to be overseeing the transaction.

During its arguments, the State made clear that Appellant did not physically hand the methamphetamine to Crow. The State emphasized that Appellant set up the firearms sale and participated in the methamphetamine sale. According to the State, Appellant "is fully aware of the drug transaction that is happening in front of him. He encourages. He aids. And the only evidence we have also is that he then participates in the benefits, in the proceeds, of that criminal transaction. He received some money for being involved." At no point did the State argue that a constructive transfer occurred.

After reviewing the evidence, arguments, and charge as a whole, we cannot conclude that the error in the charge resulted in any actual harm to Appellant. *See Sanchez,* 376 S.W.3d at 775. Accordingly, we overrule Appellant's second issue.

## DISPOSITION

Having overruled Appellant's first, second, and third issues, we ***affirm*** the trial court's judgment.

GREG NEELEY
Justice

Opinion delivered April 30, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 30, 2020**

**NO. 12-19-00311-CR**

**BILLY DON BULLARD,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 294th District Court

of Van Zandt County, Texas (Tr.Ct.No. CR16-00521)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*